## S. ARCHENHOLD & CO. ET AL. v. B. C. EVANS CO.

### No. 1945.

**1.  Attachment Bond.**

In an action of debt against W., an attachment was levied on certain property which, it was alleged, he had fraudulently conveyed to A., and A. was joined as defendant, with prayer for cancellation of the conveyance. Held, that the attachment bond was properly made payable to W. alone.

**2.  Parties—Fraudulent Grantee.**

The grantee in an alleged fraudulent conveyance can be made a party to the suit in which the land has been attached, for the purpose of testing the validity of his claim.

**3.  Homestead—Conveyance in Trust.**

A business homestead is not lost by the conveyance thereof in trust for the owners who continue to occupy it, carrying on the business in the name of the grantee.

**4.  Same—Conveyance Without Joinder of Wife.**

The husband may, without the joinder or consent of the wife, convey the homestead in satisfaction of purchase money due thereon, if he is acting in good faith.

**5.  Same—Conveyance of, Not Fraudulent as to Creditors.**

A conveyance of the homestead is not in law fraudulent as to creditors, even though fraudulently made in fact.

**6.  Trust—Parol Evidence.**

Parol evidence is admissible to show the cancellation of a secret trust which has been established by parol.

**7.  Fraud Not Vitiating.**

Where homestead property was conveyed in trust with a fraudulent purpose,

and the grantee afterward, and while it was still the homestead, purchased it in satisfaction of a debt due himself, his purchase was not vitiated by reason of his participation in the original fraudulent intent.

**8.  Vendor's Lien—Subrogation.**

Where the attempted method of conveyance fails to vest the title in a purchaser who, as part of the purchase price, has assumed and paid off a prior vendor's lien on the land, the purchaser will at least be entitled to a lien for the amount so paid.

APPEAL from Erath.  Tried below before Hon. J. S. STRAUGHAN.

*C. J. George, L. N. Frank* and *Herring & Kelley,* for appellants.

*Lindsey & Goodson,* for appellee.

HEAD, ASSOCIATE JUSTICE.—On May 28, 1890, C. O. Wright transferred his saloon business, which previous to that time he had been running in his own name, to appellants.  The ostensible consideration for this transfer was the cancellation of a valid debt of $1179, but the real purpose was to defraud Wright's other creditors, among whom was appellee.  The understanding was that the business was thereafter to be run in the name of appellants, but the profits were to belong to Wright.

While the business was being run under this agreement, Wright purchased the lot in controversy (which was the one upon which the saloon was situated) and paid therefor $1250 cash, and executed his note for $1250, payable October 1, 1891.  The cash came from the proceeds of the business while being conducted as aforesaid.  The deed to the lot was taken in the name of Wright, but he soon became uneasy for fear his creditors might reach it, and on December 22, 1890, he, joined by his wife, made a conveyance thereof to S. Archenhold, one of the appellants.  The recited consideration for this conveyance was a cash payment of $1250 and the assumption on the part of the grantee of the payment of the $1250 note given by Wright at the time of his purchase, but the real purpose was to hide the property from Wright's creditors, especially appellee.  The cash payment was not made as recited in the deed, nor was credit given Wright therefor at the time of the conveyance, but the understanding was that the lot was to remain Wright's, and be held in trust for him by the ostensible grantee for the purpose aforesaid.

Wright continued the business in the name of appellants upon this lot after this conveyance in the same manner he had done prior thereto, until November 18, 1891, when, finding himself falling behind, he agreed with appellants that they should actually give him credit for the $1,250 he had paid on the lot, and should really assume and pay the $1,250 vendor's lien note, and should hold the property as their own under the conveyance previously executed as above set forth.  Wright's wife was no party to this last agreement.  This arrangement was carried out by appellants, and thereafter Wright continued the business as before, except that appellants were credited with rent for the building, until February 15, 1892, when they transferred the business to Wright's wife, and it was thereafter conducted in her name instead of theirs.

On June 2, 1892, this suit was instituted by appellee to recover a debt of over $4000 from Wright, and the lot above described was attached as his property. Appellants were made parties to the suit, and a cancellation of the deed under which they claim, in so far as it interfered with appellee's attachment, was asked. Judgment was rendered in favor of appellee against Wright for the debt, and foreclosing the attachment against all parties.

That the attachment bond was properly made payable to Wright alone, he being the one of whom the debt was claimed, and against whose property the attachment was asked to be issued, we think there can be no question. We see no greater reason for making an attachment bond payable to the grantee in an alleged fraudulent conveyance who is made a party to the suit for the sole purpose of subjecting the property to the debt, than for making it payable to such a grantee where the property claimed by him is attached in a suit against the grantor alone, leaving the validity of the conveyance to be tested in a separate proceeding.

That the grantee in an alleged fraudulent conveyance can be made a party to the suit in which the land has been attached, for the purpose of testing the validity of his claim, is now the settled practice in this state. Looney v. Simpson, 87 Texas, 109.

That appellee had not lost its right to attack this conveyance by lapse of time, less than two years having expired, is clear. A number of important questions, however, remain, which we have had much difficulty in solving. As we have seen, the lot was first conveyed by Wright and wife to one of the appellants with the understanding that it was to be held in trust for them, to prevent it from being taken by their creditors. They, however, continued to occupy the property as their business homestead after the transfer, as they had done previous thereto. The lot, therefore, continued their homestead, notwithstanding the simulated conveyance. Beard v. Blum, 64 Texas, 62. That the business was being carried on by them in the name of appellants, has been decided by our Supreme Court to be immaterial in determining their right to hold the lot as their homestead, and by this decision we are bound, regardless of what our own views might be. King v. Harter, 70 Texas, 579.

The only question that remains, therefore, is, did Wright have the power to make the second contract by which appellants were to give him credit for $1250 and pay the note for $1250 given by him to his vendor, and keep the lot as their own, without the concurrence of his wife? It will be observed that the $1250 note appellants were to pay was a charge upon the lot superior to the homestead claim of Wright and his wife, and this arrangement was made by Wright because this note had become due and he was unable to pay it.

In De Bruhl v. Maas, 54 Texas, 474, it is said: "It was held in White v. Shepperd, 16 Texas, 172, in regard to the restraint on the husband to dispose of the homestead without the wife's consent, that 'this restriction applies where the husband has acquired full property in the land, and not where it is charged with preceding equities and incumbrances.

These must be discharged, and they have precedence over the rights of the homestead privilege; and the right of the husband to make arrangements in relation to these incumbrances, or to renounce lands thus burdened or subject to conditions and contingencies, could not be questioned by the wife, in virtue of her remote right, which might arise if the incumbrances or conditions were ever discharged or removed, unless in cases where the husband is squandering the property with the fraudulent design of depriving the wife of a homestead.' The foregoing propositions,. quoted from the opinion of Chief Justice Hemphill, are quoted with approval in Clements v. Lacey, 51 Texas, 150, in which case it was said, in the opinion by Justice Bonner, that it has long been the settled doctrine of this court, that a homestead is not acquired, as against parties holding prior equities and incumbrances, until the title to the land on which such homestead is sought to be established has been perfected by the payment of the purchase money, and that all liens accruing before. the homestead has been established must be raised, or it will be subject to forced sale for their satisfaction.' The lots being incumbered by the lien for the purchase money, the husband had the right even'to renounce the land to the holder of the lien (Clements v. Lacey, supra); and he had the right, a fortiori, to incumber it by mortgage and right of possession to the mortgagee. The consent of the wife thereto was not requisite to the validity of his contract with the plaintiff; nor was the contract so made in derogation of the homestead rights of the defendants."

We are not aware that the soundness of the views expressed in this quotation has ever been questioned. We believe the facts in this case bring it within the rules there announced, and we conclude that Wright had the power to make this second contract, whether his wife consented thereto or not. We are also of opinion that the fact that this contract was not in writing is not a serious objection to its validity. Appellee itself relies upon parol evidence to establish the alleged trust, and it seems to us to follow as a corollary that appellants should be allowed to show its cancellation in the same way.

But appellee contends that appellants should not be allowed to reap the benefit of this second contract, because the deed made by Wright and wife upon which they rely for a conveyance of the title to the lot was made for a fraudulent purpose. To this the reply is, that the property was the homestead of Wright and wife both at the time of the execution of the deed and at the time of the making of the second contract. There is no question but that it was the intention of the parties that from this latter date the title should vest absolutely in the grantee in the previous deed. Under such circumstances, the conveyance would not be in fraud of the rights of creditors, as it would have been had the trust continued after the abandonment of the property for homestead purposes. Beard v. Blum, supra; Rives v. Stephens, 28 S. W. Rep., 707.

But conceding that the cancellation of this trust was for some reason inoperative to vest the title to this lot in appellants, would they not at least be entitled to a prior lien for the repayment of the amount they

had paid upon the $1,250 note given by Wright to his vendor? We think clearly they would be. There was no fraud in the agreement under which they made this payment, and the only contention is that this forfeiture should be visited upon them because of their participation in the alleged fraud which tainted the original transaction. We are of opinion, first, that there was no fraud in either agreement of which appellee as creditor could complain, inasmuch as the property remained the homestead of the Wrights until after both contracts had been made; and, second, that even though the first agreement could be termed fraudulent as to creditors, the second one was so distinct from it that money paid thereunder should not be forfeited for the benefit of one having no claim thereon.

The judgment of the court below will be affirmed as between appellee and its debtor C. O. Wright, but will be reversed and rendered in favor of appellants so as to exempt the lot in controversy from liability to appellee's debt and attachment.

*Affirmed in part.*

*Reversed and rendered in part.*

Delivered September 28, 1895.