**KNIGHT et al. v. TANNEHILL BROS., Inc., et al.**

**No. 5154.**

Court of Civil Appeals of Texas. Amarillo.

May 6, 1940.

Rehearing Denied May 27, 1940.

554

Bean, Evans & Bean and Vickers & Campbell, all of Lubbock, for plaintiffs in error.

R. P. Moreland, of Plains, and Crenshaw, Dupree & Milam, of Lubbock, for defendants in error.

STOKES, Justice.,

Plaintiffs in error, R. L. Knight, Jr., Martha E. Davis, joined by her husband, G. E. Davis, Eva Ruth Weiss, joined by her husband, J. R. Weiss, and Alton E. Knight, a minor, appearing by his next friend and legal guardian, Martha E. Davis, filed this suit against L. B. Tannehill and wife, Lillian B. Tannehill, C. C. Tannehill, John Q. Tannehill, Mrs. Lillian Hinkle and her husband, Clarence E. Hinkle, Martha E. Tannehill, a feme sole, and Maud E. Tannehill, a feme sole, who appear here as defendants in error. Plaintiffs in error, except G. E. Davis and J. R. Weiss, are the surviving children and heirs at law of R. L. Knight, who died intestate May 9, 1928, and his wife, Susanna Knight, who died intestate April 10, 1934. The defendants in error constitute all of the former stockholders of Tannehill Brothers, Inc., a family corporation, which was dissolved after the negotiations involved in the suit were inaugurated. L. B. Tannehill managed all of the affairs of the corporation and also all of the affairs of the defendants in error pertain-ing to the corporation and its properties after its dissolution. When in this opinion reference is made to Tannehill, therefore, it alludes either to the corporation before its dissolution or the defendants in error as successors to its rights and properties after its dissolution, there being no difference as far as the matters here involved are concerned whether the incidents referred to happened before or after the dissolution of the corporation.

The suit is in the statutory form of trespass to try title and it is shown by other allegations and proof that R. L. Knight, at the time of his death, was seized and possessed of real estate consisting of twelve sections of land in Yoakum County, Texas, and six sections in the State of New Mexico. At the time of his death R. L. Knight was indebted to Tannehill Brothers, Inc. in the sum of $104,804.47, evidenced by a promissory note dated December 1, 1926, and due three years after date. The note was secured by a deed of trust on the Yoakum County land, a lien on the land in New Mexico, and a chattel mortgage lien on several hundred head of cattle, being all of the cattle owned by him. He was also indebted to F. B. Collins Investment Company in the sum of $8,000, secured by a lien on the New Mexico land; to H. E. Trippett $1,246.32, and to the State of Texas for original purchase money on part of the Yoakum County land in the sum of $8,453.25. All of this indebtedness was secured by valid liens on the whole or portions of the land.

Although the Yoakum County land was community property, after the death of R. L. Knight his surviving wife, Susanna Knight, agreed with L. B. Tannehill, acting for the corporation of Tannehill Brothers, that general administrations should be taken out in Texas and New Mexico upon the estate; waived her right to be appointed administratrix, and agreed that administrators selected by Tannehill should be appointed. This plan seems to have been agreed upon in view of the large amount of indebtedness owing by the estate, and in order, through an administrator's sale, ultimately to place the legal title in Tannehill so that he could make sales of oil and gas leases and royalty interests in the land and apply the proceeds to the payment of the indebtedness owing by the estate. Plaintiffs in error alleged that this agreement encompassed the provision that Tannehill would

take and hold the legal title in trust for Mrs. Knight and her children and that when the indebtedness of the estate, including that held by Tannehill, was paid, the portion of the lands and oil interests that had not been sold by Tannehill would be reconveyed to Mrs. Knight or her heirs or legal representatives.

The record shows that administrations, both in Yoakum County, Texas, and in New Mexico, were duly perfected; that Wm. Q. Boyce of Amarillo, in Potter County, was duly appointed administrator in Texas, and J. J. Lane was appointed administrator in New Mexico, both of whom were selected by Tannehill. Soon after his appointment, Wm. Q. Boyce made application to the probate court for an order to sell all of the twelve sections of land located in Yoakum County, Texas. The application was granted and the twelve sections were sold to Tannehill for a recited consideration of $63,580; the assumption of the taxes against the land for the year 1928, and the assumption of the balance of the original purchase price due the state of Texas.

Without going into detail as to the administrations and the manner in which the property of the estate was disposed of, it will suffice to say that, after sale of all of the cattle and after Tannehill had sold a considerable number of leases and oil interests in the Texas land and applied the proceeds to the indebtedness of the estate, it still was indebted to Tannehill in excess of $50,000. The debts to Trippett and the Collins Investment Company had been paid and the total indebtedness then amounted approximately to $60,000.

All of the property belonging to the estate located in Texas was disposed of and the Texas administrator filed his final account with an application that he be discharged. On August 19, 1929, the account was approved, the Texas administrator discharged, and the estate in Texas closed.

After Tannehill had purchased the Texas land through the administration, a well was drilled on a portion of it in an effort to discover and develop oil. About the same time a similar well was drilled near the New Mexico land. Both of these wells resulted in "dry holes" which had the effect of condemning the entire properties as potential oil lands, destroyed their value as oil properties, and put an end to further revenue from that source.

On or about October 16, 1929, after the administration in Texas had been closed and after the oil wells had been drilled and resulted in failures to discover oil, and while the estate was still indebted in the sum of approximately $60,000, Mrs. Knight and Tannehill made an agreement to the effect that Tannehill would retain and hold as his own property all of the Texas land and one section in New Mexico, in consideration of which he agreed to cancel all of his indebtedness against the estate, and the administrator of the estate in New Mexico would convey to Mrs. Knight the remaining five sections of land in New Mexico. This agreement was in parol and consummated in a conversation and negotiations between Mrs. Knight and L. B. Tannehill conducted in the office of the attorney for the New Mexico administrator at Roswell. Shortly thereafter J. J. Lane, the administrator of the estate in New Mexico, conveyed the five sections in that state to Mrs. Knight, the deed reciting a consideration of $17,600, which, the testimony shows, was not paid nor intended to be paid.

The record is voluminous, the statement of facts alone consisting of 620 pages, but it will be seen from the foregoing summary that the result of the administrations and negotiations between the parties was that all of the indebtedness of the estate, amounting approximately to $130,000, was discharged and the property, both real and personal, disposed of, leaving the estate in possession of five sections of land in New Mexico, free and clear of all encumbrance.

Mrs. Knight died April 10, 1934, and this suit was filed March 14, 1936, by plaintiffs in error as the surviving children and heirs at law of R. L. Knight and his wife, Susanna Knight, its purpose being to recover of the Tannehills the twelve sections of land in Yoakum County. In addition to the ordinary allegations of a suit in trespass to try title, plaintiffs in error alleged the various details concerning the death of their parents, appointment of the administrators, purchase of the land by Tannehill, the sales by him of the oil and gas leases, and other details concerning the handling and disposition of the real and personal properties of the estate. They alleged that the administrator's sale of the Texas land to Tannehill was void for reasons which they set out, but if not void, that he acquired the title in trust for their deceased mother and the plaintiffs

in error, the surviving children, and that the conveyances to him were for the purpose only of placing the title in Tannehill in order that he may sell oil and gas leases, pay the indebtedness due him and other creditors of the estate, and then convey back to them whatever portion of the land that may be left. They allege in this connection that, although the administrator's deed conveying the land to Tannehill recited a consideration of $63,580, it was not paid to the administrator nor credited on the indebtedness of the estate and numerous other details supporting their general allegation that the acquisition of the title was in trust and seeking to ingraft upon the administrator's deed an express trust under which Tannehill was obligated to convey the land back to them, since the trust had been executed or partially failed in its purpose. They tendered and offered to discharge and pay any balance that may be due and owing to Tannehill upon his indebtedness and prayed for an accounting and recovery of the land.

Defendants in error answered by general and special exceptions, general denial, plea of not guilty, and the three and five years statutes of limitation. They made special denials of the numerous allegations of plaintiffs in error and included in their answer a cross-action in the nature of trespass to try title.

The case was submitted to a jury upon special issues, in answer to which the jury found, in substance, that prior to the administration in Texas there was an agreement between Mrs. Knight and L. B. Tannehill that Tannehill Brothers, Inc., should acquire title to the twelve sections of land in Yoakum County, Texas, through the probate court so that leases and royalty could be sold by Tannehill to pay the debts of the Knight estate, and that Tannehill would then reconvey the land, after payment of such debts, to plaintiffs in error and their mother. They further found that Susanna Knight and L. B. Tannehill entered into a settlement agreement by which the twelve sections of land in Yoakum County and one section in New Mexico were surrendered to Tannehill Brothers, Inc., and that Tannehill Brothers would cancel the balance of its debt against the Knight estate and surrender all of the lands in New Mexico except the one section.

Based upon the verdict of the jury the court, on the 9th of January, 1938, rendered judgment, granting plaintiffs in error certain relief and recovery of minor sums of money, but denying them any relief upon their suit for recovery of the title to the land. Plaintiffs in error filed a motion for a new trial which was overruled by the court, and they have brought the case to this court upon a writ of error.

There are a number of assignments of error and propositions of law brought forward in the brief and urged by plaintiffs in error, but the controlling issues are presented by two contentions which are, substantially, as follows:

First, that the acquisition of the title by Tannehill through the administration proceedings under the agreement between him and Mrs. Knight constituted an express trust under which Tannehill held the title as trustee in subordination to the equitable title held by Mrs. Knight and plaintiffs in error; that the trust having failed in part or been executed as far as possible, they were entitled to recover the portion of the land remaining in the hands of the trustee. This contention is controverted by defendants in error who contend that the agreement did not create an express trust and, under the law, could not do so because it did not effect a separation of the legal title from the equitable title to the land. They contend that such separation of these elements of title not having been consummated, the negotiation amounted only to an agreement to convey land and, being in parol, it was void under the statute of frauds.

Secondly, plaintiffs in error contend that the agreement between Mrs. Knight and Tannehill at Roswell, New Mexico, after the administration in Texas was closed, to the effect that Tannehill would cancel his indebtedness against the estate and take complete title to the twelve sections of land in Texas and one section in New Mexico, Mrs. Knight to receive five sections of the New Mexico land in full settlement of the affairs of Tannehill and the estate, was in parol and, therefore, void under the statute of frauds. In this connection they assert that, in all events, such agreement was not effective to pass title or as a conveyance to Tannehill of the interests of the children of Mrs. Knight, they having inherited their interest in the land from their father and not being parties to such agreement. This contention of plaintiffs in error is controverted by the assertion of defendants

in error to the effect that, conceding, for the sake of argument, that the original agreement under which Tannehill procured the title to the lands through the probate proceedings did create a trust as contended by plaintiffs in error, the subsequent agreement made at Roswell, New Mexico, after the close of the Texas administration in which Mrs. Knight and Tannehill undertook finally to settle the affairs of the estate and divide the land was a valid and enforcible contract and did not violate the statute of frauds. They assert in this connection that Mrs. Knight was the survivor in the community of herself and her deceased husband, R. L. Knight; the estate was then indebted in a large sum of money; the alleged trust itself was created in parol, and Mrs. Knight as survivor of the community was clothed with power and authority to consummate the transaction in the manner detailed.

These two contentions of plaintiffs in error controverted, as they are, by defendants in error, present the questions to be decided. As we have stated, they are the controlling issues in the case and we shall discuss them in their order.

■ First: It has been the law in Texas throughout its entire judicial history that where a verbal promise of a grantee to make certain disposition of lands constitutes the means whereby he obtains the legal title a court of equity will compel performance by him of his verbal agreement. In the early case of Clark v. Haney, 62 Tex. 511, 50 Am.Rep. 536, the Supreme Court said: "Where a verbal promise of the defendant to make a certain disposition of lands is the means of obtaining to himself the legal title, so that in fact he practices a deception upon his grantor by so obtaining the lands, and then holding and dealing with them as his own, a court of equity will compel him to perform his verbal agreement. All that is necessary is that the grantor has been duped by such promises into assigning his right to property, and that the trust has been afterwards repudiated."

■■ In the still earlier case of James v. Fulcrod, 5 Tex. 512, 55 Am.Dec. 743, Chief Justice Hemphill pointed out a marked difference between our statute of frauds and the English act for the prevention of frauds and perjuries in that the English statute provides that no action shall be brought upon any contract or sale of lands, tenements or hereditaments or any interest in or concerning them unless the same be in writing; whereas the express provisions of our statute are, in substance, that no action shall be brought upon any contract for the sale of lands, tenements and hereditaments unless the same be in writing. It was observed in the opinion that a contract for the sale of lands, tenements or hereditaments or any interest in or concerning the same is widely different from a contract for the mere sale of lands, and, though a trust or confidence such as the one under review in that case might be embraced in the English statute, it certainly is not embraced by either the terms or spirit of the Texas law. It was held in that case that the provisions of the English law, which have been adopted by most of the states of the Union, prohibit the creation of a trust in lands unless manifested or proved by instruments of writing or result by implication of law; but under our law, express, as well as constructive trusts, may be proven and sustained by parol evidence. Our courts have consistently adhered to these early established rules and interpretations and it is not an open question in this state as to whether or not an express trust may by parol be ingrafted upon a deed of conveyance absolute upon its face. Parol evidence is not only admissible to establish such a trust but such evidence does not contravene the rule which forbids the introduction of parol evidence to vary the terms of a written instrument. Watts v. Woffard, Tex.Civ.App., 239 S.W. 321; Lyons v. Texorado Oil & Gas Co., Tex. Civ.App., 91 S.W.2d 375; Tieman v. Dyer, Tex.Civ.App., 114 S.W.2d 669; Faville et al. v. Robinson et al., 111 Tex. 48, 227 S. W. 938; Milliken v. Anderson, Tex.Civ. App., 294 S.W. 921; Masterson v. Amarillo Oil Co., Tex.Civ.App., 253 S.W. 908.

■ It is true that Mrs. Knight did not execute a deed conveying the land to Tannehill and the facts of this case are not exactly on all fours with some of those upon which the decisions in the above cases were based. In other words, if a parol trust was ingrafted, it was not, in this case, ingrafted upon a deed executed by the cestui que trust as in some of those cases. But, in our opinion, the difference in this respect does not change the rule nor remove this case from its operation. The property of the estate was community property of R. L. Knight and his surviving wife, Susanna Knight, and Mrs.

Knight, therefore, had the right to qualify as community administratrix. She also had the right and possessed full authority and power under the law of this state to sell and dispose of the property of the community, including its lands, for the purpose of discharging the community debts. She had the further right under the law to become the general administrator in preference to others. The community estate of herself and deceased husband owed large sums of money which were secured by liens on the land and personal property. The major portion of the indebtedness was held by Tannehill, and Mrs. Knight, according to the record, and as found by the jury, relinquished these rights and permitted the title to the property to be passed through the administrations by administrators selected by Tannehill as a means of accomplishing the same thing she had the right to accomplish through a deed executed by her encumbered by a parol trust. We can see no difference as far as the principle of law is concerned between the course taken by the parties in this case and the course which Mrs. Knight unquestionably had the right to pursue through the execution of a deed and it is our conclusion that the legal effect of the acquisition by Tannehill of the title to the Texas land in the manner in which it was acquired by him and in pursuance of the agreement which, according to the findings of the jury, he had with Mrs. Knight, was to ingraft upon the conveyance under which he procured the title a parol trust and that he held the legal title in trust for Mrs. Susanna Knight and her children.

■ The contention of defendants in error that in order to establish a trust in real property there must be a separation of the legal title from the equitable title is undoubtedly a correct proposition of law. 1 Pomeroy's Equity Jurisprudence, 4th Ed., par. 147; McCamey v. Hollister Oil Co., Tex.Civ.App., 241 S.W. 689; Wheeler v. Haralson, 128 Tex. 429, 99 S.W.2d 885, 886. Defendants in error stress the recent holding of the Supreme Court in the case last cited and contend with much force that the instant case is controlled by the principles therein announced. We do not agree with them in this contention. The Supreme Court held in the Wheeler case that no trust was created in the negotiations between the parties in that case, all of whom were heirs of D. I. Haralson, deceased. The court said that it conclusively appeared that plaintiffs, the Haralsons, by their deed to Mrs. Wheeler, parted with both the legal and equitable title to the land. This was so because Mrs. Wheeler had thereafter conveyed the land to the bank which was the largest creditor of the estate of the deceased father, and the bank reconveyed it to Mrs. Wheeler, retaining a vendor's lien to secure certain notes executed by Mrs. Wheeler, ostensibly as part of the purchase price, but in reality, no doubt, representing the original amount of the indebtedness to the bank. The Haralsons alleged and claimed that they had an agreement with Mrs. Wheeler to reconvey to them their interests in the land after the indebtedness was refinanced and that this agreement created a trust which they were entitled to have enforced. They stated in their brief, however, that they did not ask to have the property reconveyed to them free and clear of the notes and vendor's lien which had been created by Mrs. Wheeler in favor of the bank, but that the purpose of the litigation was to require Mrs. Wheeler to reconvey to them their undivided interests encumbered with the liens which she had placed thereon. The court said: "It is thus seen that plaintiffs have fully ratified the validity of the existing vendor's lien retained by the bank in conveyance to Mrs. Wheeler, and this necessarily constitutes a recognition that the deed of September 27, 1927 [by which they conveyed their interest to Mrs. Wheeler], conveyed, as it purported to do, the complete legal and equitable title to their interests in the lands, subject to a parol agreement on the part of Mrs. Wheeler to reconvey." It was because of this recognition on the part of the Haralsons to the effect that their deed had conveyed to Mrs. Wheeler the complete title both legal and equitable to their interest in the land that the court held these two elements of the title had not been separated, but were vested in Mrs. Wheeler by their own deed of September 27, 1927. Therefore, the court concluded, no separation of the legal from the equitable title had been effected and no trust could have arisen. The court cited the case of Foster v. Ross, 33 Tex.Civ.App., 615, 77 S.W. 990, as being in point and announcing the principle upon which the Wheeler case was decided. In the Foster case it was contended that a vendor had made an agreement to purchase land sold by him at a sale under

foreclosure of his vendor's lien notes and convey the same to another in case a specified sum was paid. It was held that no trust was created and it will readily be seen that the appellee in that case did not hold, and could not have held, either the legal or equitable title. Neither had been conveyed or retained by him nor by anyone for him nor had anything else been done that effected a separation of the legal from the equitable title. The agreement was, therefore, nothing more than a verbal promise to convey. Likewise in the case of Dietrich v. Heintz, 44 Tex.Civ.App. 602, 99 S.W. 417, cited by the court in the Wheeler case and the other cases therein cited.

■ The contention of defendants in error in this connection that the agreement found by the jury to have been made between Mrs. Knight and Tannehill concerning the acquisition of the title by him, negatives any idea of trust because the whole title was conveyed to Tannehill by the administrator's deed, is not tenable because, under the evidence and as found by the jury, Mrs. Knight, by verbal agreement with Tannehill retained unto herself and her children the equitable title which was a portion or an element of the title of which she was then possessed. This had the effect of separating the equitable from the legal title and placing the latter in Tannehill in trust for the purpose of disposing of oil and gas leases, paying the indebtedness of the estate and reconveying what was left to the original owners. The fact that Tannehill assumed the taxes and an indebtedness of $8,000 due the State of Texas as original purchase money of the land when he procured the title under the administrator's deed did not have the effect of relieving the deed of its encumbrance by an express trust. According to the record, he was under no obligation to assume such indebtedness. His contract with Mrs. Knight did not require him to do so and his assumption of the taxes and the state debt was his own voluntary act as far as his obligation to Mrs. Knight under their agreement was concerned.

Under the facts revealed by the record before us and the well established rules of law in this state as revealed by the decisions of the courts which we have cited, and many others, we must conclude that Tannehill acquired the title to the Texas land belonging to the Knight estate under an express trust to deal with it in the manner shown in the foregoing discussion.

■ Secondly: The second and remaining controlling question presented by the briefs involves the extent and legal effect of the parol agreement entered into at Roswell, New Mexico, between Mrs. Knight and R. L. Tannehill concerning the final adjustment of the property rights and business affairs existing between them. The administration in the probate court of Yoakum County, Texas, had been closed and the administrator discharged prior to the making of this agreement. The property of the estate, at least that portion of it which was located in Texas, was community property of Mrs. Knight and her deceased husband. She had not qualified as community administratrix but had consented to a general administration and, under the law, she could not have interfered with the property or made any disposition of it during the pendency of the general administration. The first question presented here is, did she have legal authority as survivor of the community, after the general administration had been closed and the administrator discharged, to make a binding agreement as community survivor and dispose of the community property for the purpose of discharging community debts? Counsel state in their brief that they have been unable to find a decision by any court in which this question has been decided, and the rather extensive search we have made has failed to reveal any such decision. The record warrants the conclusion, however, that Mrs. Knight was still a widow on November 16, 1929, when the agreement was made. She undoubtedly had such authority prior to the institution of the administration proceeding and, although such power and authority were suspended during the pendency of the administration, undoubtedly it was restored to her when the administration was closed and the administrator discharged. Art. 3680, R.C.S.1925, provides that upon the marriage of the surviving wife she shall cease to have control or management of the community estate. Regardless of this statute, however, if she be divorced from her second husband, such control and management are restored to her upon the theory that such general authority, although she may not have qualified as community administratrix, arises out of her interest in the community property and not from her relation to her deceased husband. It is, therefore, held by

the courts that when she becomes the wife of another and subject to his control, her legal status is so changed that she cannot act without his concurrence and her power and authority over the community property of the former marriage should be suspended during the continuance of the second marriage. Upon termination of the latter marriage, however, she is restored to her status as a feme sole, and her status in respect to the community property being the same, she then becomes possessed of all of the qualifications which existed before the second marriage. Summerville v. King, 98 Tex. 332, 83 S.W. 680. It is, therefore, the policy of our law that, where the powers and authority of a survivor in community are suspended by the happening of some event which creates a condition incompatible with their free and untrammeled exercise, and such condition is relieved or changed in such manner as that the incompatibility or impediment is removed, the powers and authority which the survivor possessed prior to the happening of such event are restored and he may proceed as if the event had not happened. The general administration in no sense destroyed the rights, power and authority of Mrs. Knight as survivor of the community, but merely suspended them because, to permit their exercise, during the pendency of the administration would be to permit a menacing interference with the orderly processes of the probate court and the efficient management, control and disposition of the property by the administrator. After the administration was closed and the administrator discharged, these reasons no longer existed. It must be held, therefore, that the rights, powers and authority of Mrs. Knight as the survivor in community were restored. We hold, therefore, that Mrs. Knight had authority to make the agreement that was consummated between her and R. L. Tannehill at Roswell on November 16, 1929, by which the matters between them were adjusted, the title to the Texas land was vested in him, and Mrs. Knight received the five sections of land in New Mexico. It is hardly necessary to say that under the law of this state a survivor of the community has power and authority to sell and convey the property of the community in order to adjust and discharge the community debts and this without going through the formal processes of perfecting community administration and giving the required bond. Griffin v. Stanolind Oil & Gas Co., 133 Tex. 45, 125 S.W.2d 545, and authorities there cited.

Mrs. Knight's power and authority as survivor of the community of herself and her deceased husband having been restored to her after the close of the administration proceedings in Texas, and existing, as they then did under the law, the only question remaining is whether or not she could accomplish the adjustment of the property rights, acquire for the community the title to the land in New Mexico and settle in Tannehill the title to the twelve sections of land in Yoakum County, Texas, by parol agreement. There can be no question that she would have had the right to accomplish these ends by appropriate written instruments. She could have conveyed the Texas lands by a formal deed. The legal or record title to the land was already vested in Tannehill, however, having theretofore been conveyed to him by the Texas administrator. The only interest which she could have conveyed to him in settlement of the indebtedness of the estate was the equitable title which she retained under her parol agreement with Tannehill before the administration proceedings in Texas were instituted. If she had executed a deed of conveyance and delivered it to Tannehill, it would have conveyed only such interests as she and the estate held under the parol trust. In this case plaintiffs in error relied upon parol evidence to establish the alleged trust and that was the only title or interest which they could have had in the land. This being true it necessarily follows that the trust could be relinquished and cancelled by the same process, that is, by parol. A deed from Mrs. Knight, insofar as Tannehill's record title was concerned, was wholly unnecessary and if Mrs. Knight had attempted to repudiate the agreement and recover the title, she would have been denied such right because, under the same agreement, she had received the title to five sections of land in New Mexico and the estate had been relieved of an indebtedness in excess of $50,000. In the case of Archenhold v. B. C. Evans Co., 11 Tex.Civ. App. 138, 32 S.W. 795, 796, it is said: "Appellee itself relies upon parol evidence to establish the alleged trust, and it seems to us to follow as a corollary that appellants should be allowed to show its cancellation in the same way."

In the case of Rebold Lbr. Co. v. Scripture, Tex.Civ.App., 279 S.W. 586,

the suit was instituted to recover a town lot which had been conveyed to the defendant in trust for the plaintiff corporation. The corporation furnished the purchase money and a resulting trust was established, although not shown by the record. The stockholders of the corporation made an oral agreement with the defendant that the lot should belong to him in fee simple. The court held that the agreement as to the equitable interest of the corporation, although in parol, did not violate the provisions of the statute of frauds and approved a counter-proposition appearing in the brief to the effect that "where the equitable title of a cestui que trust in land, the legal title to which is in a trustee, is provable only by parol evidence, in such case parol evidence is admissible to show a relinquishment or cancellation of the trust, so that the trustee shall thereafter have entire title and beneficial ownership of the land." A large number of authorities are cited in support of the holding and a writ of error was refused by the Supreme Court. In our opinion, the law is well established that, Tannehill holding the legal title to the property here involved, and the community estate, of which Mrs. Knight was the survivor, holding an equitable title established in parol, Mrs. Knight had the right, power and authority to relinquish the trust by parol agreement. The jury found in answer to special issue No. 3 that Mrs. Knight and Tannehill entered into a settlement agreement by which the twelve sections of land in Yoakum County, Texas, and one section in New Mexico were surrendered to Tannehill and the latter cancelled the balance of his debt against the Knight estate and surrendered all the lands in New Mexico except the one section. The finding is amply supported by the testimony and, in our opinion, the adjustment and settlement of the matters between the Knight estate and Tannehill, although in parol, were legally settled and finally adjusted. Defendants in error thereby became vested with the fee simple title to the lands sued for by plaintiffs in error in this case and the judgment of the trial court in which it so decreed was the correct and proper one.

Other assignments and propositions are presented in the brief, but, as we have already stated, those we have discussed control the disposition of the case. We have, nevertheless, examined all of the assignments of error presented by plaintiffs in

error and find no reversible error in any of them. The judgment of the court below will, therefore, be affirmed.