Emilio ALVAREZ et al., Appellants,

v.

Jack SMITH et al., Appellees.

No. 5890.

Court of Civil Appeals of Texas.

El Paso.

June 14, 1967.

Rehearing Denied July 19, 1967.

Joseph J. Rey, El Paso, for appellants.

Edwards, Belk, Hunter & Kerr, El Paso, for appellees.

## OPINION

CLAYTON, Justice.

This case arose from the importation from Juarez, Chihuahua, Mexico for sale in El Paso, Texas of 112 head of Mexican cattle. The suit began when one Emilio Alvarez, a resident of Juarez, Mexico, filed, on April 17, 1965, in the District Court of El Paso County, an application for writ of attachment on the cattle, then in El Paso, naming Carlos Lightbourne, a custom broker, and B. C. Cline, manager of R. L. Zeigler Union Stock Yards, who were alleged in the application to have custody of the cattle in El Paso belonging to plaintiff Alvarez, and also naming as defendant one Jack Smith who was alleged to be indebted to Alvarez in the amount of $5,550.48, purchase price of the cattle, and stating further that Smith was about to remove the cattle from El Paso to another state in defraud of Alvarez, the said Smith having refused to secure his debt to Alvarez. Lightbourne and Cline were subsequently dismissed from the cause. Plaintiff Alvarez was the principal in an attachment bond dated the same date, and T. A. Merrill and F. A. Hernandez were his sureties. The writ of attachment was issued and the cattle were seized by the sheriff of El Paso County the same date. On April 20, 1965 the said Jack Smith filed in said cause his cross-action against Alvarez and the sureties on his attachment bond, alleging the above facts and that the issuance of the writ of attachment and seizure were wrongful in the following particulars:

(a) that Alvarez was not a citizen of the United States;

(b) that Smith was not indebted to Alvarez in any sum whatever; and

(c) that the affidavit for attachment was false in that Smith had purchased no cattle from Alvarez.

The cross-action further alleged the false affidavit which caused the levy and seizure of the cattle was knowingly and maliciously made by Alvarez to Smith's damage in reputation, credit and standing as a cattle buyer and trader in the amount of $5,000.00, and resulted in the depreciation of the cattle in the amount of $1,120.00, plus exemplary damages of $10,000.00. The cross-action prayed that the writ of attachment be vacated and that the cattle be decreed to belong to Smith and that he recover actual damages of $6,120.00 and exemplary damages of $10,000.00.

On April 21st Alvarez filed what he termed his "Original Petition" alleging that he had sold the cattle to Smith on or about April 15, 1965 for $7,890.75, the cattle to be delivered to the custom broker Lightbourne, who was to pay all custom and brokerage charges and upon receipt of the total amount of the balance due on the sales price from Smith, to deliver the cattle to him. That Smith did pay $2,254.50 as brokerage and custom fees but failed and refused to pay the balance of the purchase price of $5,236.25 (amended to $5,636.35), but nevertheless the custom broker gave instructions to Cline, in charge of the stock yards, to deliver the cattle to Smith. That because of this, Alvarez claimed he was forced to bring the application for attachment at a cost of $1,500.00 and court costs, which, with the amount still owing on the cattle, amounted to the sum of $7,136.25, plus court costs, plus attorney's fees of $750.00, for which he prayed judgment or foreclosure on the cattle and a deficiency judgment, plus exemplary damages against Lightbourne in the amount of $10,000.00.

On April 23rd the court, after a hearing and posting of $8,500.00 bond by Alvarez and his sureties, issued an order of sale and the cattle were sold by the sheriff for $8,750.00, which after costs, left a balance of $8,662.25 which was deposited in the registry of the court.

On April 27, 1965, Jack Smith filed his first amended cross-action in which he stated that he had bought the cattle from Mr. Stan Swauger of Phoenix, Arizona, and that he had paid the American custom

duties on the cattle, plus $181.39 Mexican custom charges, for a total of $1,220.27. That he had also issued his draft to Swauger for $6,670.48, the balance of the purchase price of the cattle, but because of their seizure he caused this draft to be refused at the bank, but he had been out the custom duties, plus other expenses and attorney's fees in addition to his expected profit on the cattle, in a total amount of $7,000.00, above the $5,000.00 damage to his reputation and $10,000.00 exemplary damages, for which he prayed judgment against Alvarez and his sureties, jointly and severally.

Also, on April 27th, Stan Swauger filed his petition in intervention, complaining of Alvarez and his sureties and alleging that he had purchased from a Mexican company known as Ganado y Carnes, and one Enrique Romay, reportedly the General Manager or President of the company, various lots of cattle including the cattle here involved, which he had sold to Jack Smith. Thereafter he had been contacted by Alvarez, who had represented himself as an agent of Enrique Romay, and informed him (Swauger) that the Mexican duties and expenses in the amount of $1,350.00 had to be paid before the cattle could be shipped to El Paso. Swauger alleged that he had wired this amount to Alvarez and directed that the cattle be shipped to the purchaser, Jack Smith. That the latter had issued his draft to Swauger in the amount of the balance of the purchase price, $6,670.48, but that this draft was dishonored after the cattle were seized under the falsely-obtained writ of attachment. In addition to this loss, intervenor claimed other expenses, attorney's fees and damage to reputation totaling $13,020.48, plus $10,000.00 exemplary damages.

Trial was to a jury that answered, in response to three special issues, the following:

(1) that Emilio Alvarez had not sold the cattle to Jack Smith;

(2) that Jack Smith was entitled to $4,-500.00 for loss of expected profits, had not the writ of attachment been issued; and

(3) that Stan Swauger had incurred $750.00 expenses occasioned by the issuance and levy of the writ of attachment.

On this verdict the court entered the following judgment, after overruling motions for judgment by Alvarez and his sureties, and Smith and Swauger:

By agreement of counsel, dismissed Cline and Lightbourne from the case.

That Emilio Alvarez take nothing in his suit against Smith.

That Jack Smith recover from Alvarez, Merrill and Hernandez, jointly and severally, the sum of $1,220.27, representing U. S. Customs duties plus $4,500.00 as found by the jury in answer to Issue No. 2, with interest on the total amount of $5,720.27 at 6% from April 17, 1966.

That Stan Swauger recover from Alvarez the sum of $6,670.48 representing the draft that was not paid, $1,350.00, representing Mexican Customs duties, plus $750.00 as found by the jury in answer to Issue No. 3 with interest on the total sum of $8,770.48 at 6% from April 17, 1966; that Swauger receive the $8,662.25 from the registry of the court derived from the sale of the cattle and an execution for the deficiency of $108.32 plus interest provided for above.

Appeal was taken by Alvarez, Merrill and Hernandez.

Appellants present five points of error. The first point complains of the action of the court in ordering the clerk to issue its check to intervenor Stan Swauger for the amount of the proceeds from the sale of the cattle, in violation of Article

291, Vernon's Ann.Civ.St. This Article reads:

"ART. 291. Claimant's bond and affidavit

"Any person other than the defendant may claim the personal property so levied on, or any part thereof, upon making the affidavit and giving bond required by the provisions of the title relating to the trial of the right of property."

But intervenor here acted under authority of law as set out in Sections 125 and 126, 6 Tex.Jur.2d 660 and 661, Attachment, as follows:

§ 125—"A cause of action for wrongful attachment arises at the very instant when a wrongful seizure is made, regardless of whether enforcement of the claim is sought by action on the bond or otherwise."

§ 126—"The victim of a wrongful attachment need not resort to the statutory remedy of trial of right of property."

Brown & Co. v. Rohr, 228 S.W.2d 322, 324 (Tex.Civ.App., 1950; n. w. h.). The pleadings and proof of intervenor certainly support this action and we therefore overrule the first point of error.

The second point of error charges error in entering judgment against appellants Alvarez, Merrill and Hernandez for $4,500.00.

The third point of error asserts error of the trial court in entering judgment against appellants Alvarez, Hernandez and Merrill for the sum of $1,220.27.

■ These two points of error treat the trial court's entry of judgment in favor of Jack Smith and therefore will be discussed together. Smith's amended cross-action was against Alvarez as principal and Merrill and Hernandez as sureties on the attachment bond. This was a remedy available to Smith, among other remedies. See Half, Weiss & Co. v. Curtis, 68 Tex. 640, 5 S.W. 451. Also see 6 Tex.Jur.2d 664, 665, § 129, Attachment:

"§ 129. Election of remedies.

"Although the fact that the defendant replevied the attached property does not preclude him from maintaining a counterclaim for wrongful attachment, it is established that if wrongfully attached property has, without special damage thereto, been replevied by the owner, the latter may not sue for a conversion of the goods and recover their full value. And although partners may treat a levy on farm property as a conversion, they waive this remedy where they secure possession of the property by a motion to quash the writ and to abate the suit.

"A defendant in attachment is not required to elect between suing a plaintiff in attachment on his liability independent of the bond, and suing on the bond; he may, in an action for wrongful attachment, join the sureties on the attachment bond."

The second and third points of error are overruled.

The fourth point of error charges error on the part of the trial court in permitting the introduction of defendant's (and cross-plaintiff's) Exhibits Nos. 6 and 7 over appellant's objections, and the fifth point of error charges that the attachment bond is defective in that it is not made to a named defendant.

■ As to the fourth point of error, the exhibits complained of were customs agent's invoices and the like, introduced to show the process employed by Ganado y Carnes in shipping cattle from Mexico to the United States for various purchasers. The introduction in evidence of these exhibits was objected to, but the grounds of objection are not clear from the record. In any event, we see no fundamental error in allowing

these exhibits and overrule appellant's fourth point of error.

As regards the fifth point of error, the attachment bond reads as follows:

———◆———

Appellant's objection states: "The attachment bond is defective in that it is not made to a named Defendant * * * Attachment bond should be made payable to the person against whose property the writ is issued." The writ of attachment recites that the cattle in question were in the possession of B. C. Cline and *belong* to Jack Smith. The bond names these two defendants, and the case of Archenhold v. B. C. Evans Co., 11 Tex.Civ.App. 138, 32 S.W. 795, 796, cited by appellants, merely holds:

"* * * That the grantee in an alleged fraudulent conveyance can be made a party to the suit in which the land has been attached, for the purpose of testing the validity of his claim, is now the settled practice in this state."

We can see no merit to the sixth point of error and it is accordingly overruled.

Having examined all points of error and finding no error in this record, the judgment of the trial court is in all things affirmed.