# K. W. GRIFFIN ET AL V. STANOLIND OIL AND GAS COMPANY.

No. 7249.  Decided March 8, 1939.
Rehearing  overruled  April 5, 1939.
(125 S. W., 2d Series, 545.)

*Brin & Cate,* and *Bond & Poter,* all of Terrell, *Wynne & Wynne,* of Longview, for plaintiffs in error.

The surviving husband having been joined in executing an oil and gas lease, by his married daughters and his second wife, and the lease having provided that if said lessor (whether one or more) owned less than the full fee simple title, then their rents and royalties should be reduced in proportion to the interest actually owned, excludes the idea that the husband was selling by virtue of his authority as community survivor, and the court could not presume that the sale was by a community survivor, as such, for the purpose of paying community debts. Mariposa Land & Cattle Co. v. Silliman, 87 Texas 142, 26 S. W. 978; Henry v. Phillips, 105 Texas 459, 151 S. W. 533; Sinclair Ref. Co. v. Womack, 66 S. W. (2d) 402.

*Turner, Rodgers & Winn* and *M. B. Solomon,* of Dallas, and *Clay Tallman* and *L. A. Thompson, Jr.,* all of Tulsa, Okla., for defendant in error.

Where the heirs of the deceased wife and their assigns seek to recover an interest as such in community property against the purchaser from the community survivor, said purchaser or his assigns need only show the existence of community debts at the time of such purchase in order to defeat said claim. Ashe v. Yungst, 65 Texas 631; Johnson v. Harrison, 48 Texas 257; Moody v. Butler, 63 Texas 210.

MR. PRESIDING JUDGE HARVEY delivered the opinion of the Commission of Appeals, Section A.

This suit, in so far as this appeal is concerned, is an action of trespass to try title instituted by the plaintiffs in error, K. W. Griffin, F. E. Lumpkin, individually, and John Protho, as guardian of the estate of Maurice Protho, a minor, against the Stanolind Oil and Gas Company, to recover an undivided interest in the oil and gas leasehold estate held by the Company in a certain tract of twenty and a fraction acres in Gregg County. The said tract of twenty and a fraction acres is a part of a 54-acre tract belonging to Alex Lockhart and the heirs of his first wife. The case was tried before the court without a jury and judgment was rendered in favor of the Stanolind Company. On appeal, the Court of Civil Appeals affirmed the judgment of the trial court. 102 S. W. (2d) 231.

The plaintiffs in error have been granted the writ of error.

The material facts are substantially as follows:

Prior to February, 1930, Alex Lockhart and Julia Lockhart were husband and wife. During such marriage relation, Alex bought the 54-acre tract mentioned above. The children of this marriage were Ruth (who married Frank Lockhart) and Lovie (who married Lonnie Coulter). Julia had two children by a former marriage, namely: Effie Thomas and another daughter, Minnie Protho, who died intestate leaving five children: Elihu Protho, Obie Protho, Naomi Protho, James Protho and Maurice Protho. Julia died intestate on February 3, 1930, leaving as her heirs Ruth and Lovie, Effie Thomas and the five children of Minnie Protho, deceased.

Alex married his second wife, Cohesia, soon after Julia died. On October 9, 1930, Alex and his second wife, Cohesia, and Ruth and Lovie, and their respective husbands, executed to L. A. Grelling, Jr., and O. M. Boren, an oil and gas lease covering said 54-acre tract of land along with two other tracts. The three tracts contained in the aggregate 181 3/4 acres. So far as appears from the record before us, only the 54 acre-tract belonged to the community estate of Alex and his first wife, Julia. Omitting immaterial provisions, said lease reads as follows:

"OIL AND GAS LEASE

"AGREEMENT, made and entered into the 9th day of October, A. D. 1930, by and between A. A. Lockhart, and wife, Cohesia Lockhart, and daughter, Ruth Lockhart and husband, Frank Lockhart, of Gregg County, Texas, and daughter, Lovie Coulter, and husband, Lonnie Coulter, of Dallas County, Texas, of —————, hereinafter called lessor (whether one or more), and L. A. Grelling, Jr., & O. M. Boren, hereinafter called Lessee:

WITNESSETH: That the said lessor, for and in consideration of TEN AND NO/100 ($10.00) DOLLARS, cash in hand paid, the receipt of which is hereby acknowledged, and of the covenants and agreements hereinafter contained on the part of lessee to be paid, kept, and performed ha— granted, demised, leased, and let, and by these presents do grant, lease, and let unto the said lessee for the sole and only purpose of mining and operating for oil and gas, and of laying pipe lines, and of building tanks, power stations, and structures thereon to produce, save and take care of said products, all that certain tracts of land situated in the County of Gregg, State of Texas, described as follows, towit:
"* * * *

"It is agreed that this lease shall remain in force for a

term of ten years from date, and as long thereafter as oil or gas or either of them, is produced from said land by the lessee.

"In consideration of the premises, the said lessee covenants and agrees:

"1st. To deliver to the credit of lessor, free of cost, in the pipe line to which lessee may connect his wells, the equal one-eighth part of all oil produced and saved from the leased premises.

"2nd. To pay to lessor, as royalty for gas from each well where gas only is found, while the same is being sold or used off of the premises, one-eighth of the market price at the wells of the amount so sold or used, the lessor to have gas free of charge from any gas well on the leased premises for all stoves and inside lights in the principal dwelling house on said land by making lessor's own connections with the well at lessor's own risk and expense.

"3rd. To pay to lessor as royalty for gas produced from any oil well, and used by lessee for the manufacture of gasoline, one-eighth of the market value of such gas. If such gas is sold by lessee, then lessee agrees to pay lessor, as royalty, one-eighth of the market price at the wells of the amount sold.

"If no well be commenced on said land on or before the 9th day of October, 1931, this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor, or to the lessor's credit in the First National Bank at Longview, Texas, or its successors, which shall continue as the depository regardless of changes in the ownership of said land, the sum of One Hundred Eighty One and 75/100 Dollars, which shall operate as rental and cover the privilege of deferring the commencement of a well for 12 months from said date. In like manner, and upon like payments or tenders, the commencement of a well may be further deferred for like periods of the same number of months successively. And it is understood and agreed that the consideration first recited herein, the down payment, covers not only the privilege granted to the date when said rental is payable as aforesaid, but also the lessee's option of extending that period as aforesaid, and any and all other rights conferred.

"* * *

"If said lessor owns a less interest in the above described land than the entire and undivided fee simple estate therein, then the royalties and rentals herein provided for shall be paid the said lessor only in proportion which lessor's interest bears to the whole and undivided fee.

"* * *

"Lessee shall have the exclusive right to build, operate, and maintain pits, reservoirs, pickup stations, and plants for the purpose of picking up and conserving the waste oil that flows down the creeks, ravines, and across the land embraced in this lease, whether said oil is produced from lands covered by this lease, or other lands, and lessor shall be entitled to receive the royalty hereinbefore reserved on all such oil so saved.

"* * *

"Title to the minerals vested in grantee under this grant shall not end, or revert to grantor, until there is a complete, absolute, and intentional abandonment by grantor of each and all of the purpose, expressed or implied, of this grant and every part and parcel of the premises described in this grant.

"Lessor hereby warrants and agrees to defend the title to the lands herein described, and agrees that the lessee shall have the right at any time to redeem for lessor, by payment, any mortgages, taxes, or other liens on the above described lands, in the event of default of payment by lessor, and be subrogated to the rights of the holder thereof, and lessor hereby agrees that any such payment made by lessee for the lessor shall be deducted from any amounts of money which may become due the lessor under the terms of this lease.

"In Testimony Whereof, we sign, this the 9th day of October, 1930.

"A. A. Lockhart
Cohesia Lockhart
Ruth Lockhart
Frank Lockhart
Lonnie Coulter
Lovie Coulter"

At the time this lease was made, there were state and county taxes in the sum of $10.32, for the year 1929, due on the 54-acre tract. Taxes for the same year were also due on the other two tracts. Two days after the lease was executed, Alex paid said taxes on the three tracts, which aggregated $38.70.

About a year after the lease was executed, the Stanolind Company, by mesne transfers, acquired all the rights of Grelling and Boren under said lease in so far as the 20-acre tract in controversy is concerned. A short time before this, the plaintiffs in error Griffin and Lumpkin, acquired all the interest (4/40th interest) claimed by Elihu, Obie, Naomi and James Protho, as heirs of their grandmother, Julia Lockhart, deceased, in seven eighths of the leasehold estate claimed by the

Stanolind Company in said 20-acre tract. Griffin and Lumpkin sue herein for the recovery of said 4/40 interest. The other plaintiff in error, John Protho, as guardian of Maurice Protho, minor, sues for 1/40th interest; making in all an undivided interest of 5/40th (or 1/8th) of 7/8th of the mineral estate in the 20-acre tract, which the several plaintiffs in error seek to recover.

■ The Stanolind Company claims that because a community debt of Alex and Julia, in the sum of $10.32, existed at the time the lease to Grelling and Boren was made, the lease had effect to transfer to said lessees seventh eighths of the mineral estate in the 54-acre tract, including the interest of all the heirs of Julia in said seven eighths interest. The plaintiffs in error contest this on the ground that it does not appear that, so far as the 54-acre tract was concerned, Alex executed the lease for the purpose of paying said community debt. As supporting this contention they point to the fact that in executing the lease, Alex did not purport to act as community survivor. The fact pointed out is immaterial. In the case of Jones v. Jones, 15 Texas 143, this Court in dealing with the subject of the power of a surviving husband to sell community property to pay community debts, had this to say:

"As survivor he had competent authority to discharge the debts of the partnership; and whether the discharge of debts, or any act which he might lawfully do as survivor, be done in his own name simply, or in his name as survivor, is immaterial. The law, for the preservation of rights, would look to the substance and not the form."

This doctrine was repeated in Carter v. Conner, 60 Texas 52, 59, in this language:

"Conveyances during the existence of the conjugal association by the firm are made by the husband alone and in his name, and those made to the firm are usually, though not universally, to him individually. Whatever he does after the death of his wife in the way of conveying property in payment of debts, or receiving it to satisfy those due the community, is done in his own name, and they are as effectually binding upon her heirs as if they were joined in the conveyance."

■ The same doctrine has been recognized and applied in later cases, including Rippy v. Harlow, 46 Texas Civ. App., 52, 101 S. W. 850 (Writ ref.); Jones v. Harris, 139 S. W. 69 (Writ ref.); Iiams v. Mager, 216 S. W. 422. Moreover it is definitely settled that, unless fraud appears, a sale of community prop-

erty which has been made by the surviving husband will be sustained, as binding the heirs of his dead wife, where community debts existed at the time the sale was made. The power of the surviving husband to make such a sale depends exclusively on the fact that community debts exist. This is a general power, and the purchaser is under no duty to inquire as to whether the survivor, in making the sale, is exercising said power for the purpose of paying community debts, or to see that the proceeds of the sale are applied to their payment. Jones v. Harris, supra; Norwood v. King, 155 S. W. 366 (Writ ref.); Kinard v. Sims, 53 S. W. (2d) 803 (Writ ref.); Clemmons v. McDowell, 12 S. W. (2d) 955 (Writ ref.); Crawford v. Gibson, 203 S. W. 375 (Writ ref.); Jennings v. Borton, 44 Texas Civ. App. 280, 98 S. W. 445 (Writ ref.); Sanger Bros. v. Heirs of Moody, 60 Texas 96; Johnson v. Harrison, 48 Texas 257; Ashe v. Yungst, 65 Texas 631.

■ It is further contended that the lease affirmatively shows on its face that in making the lease Alex, so far as the 54-acre tract was concerned, was dealing with his individual interest in the property conveyed and not with the interest belonging to the heirs of Julia. The grounds upon which this contention is based are, first, the fact that Ruth and Lovie, two of Julia's heirs, joined in the execution of the lease; and, secondly, the clause in the lease which provides in substance that in case the lessors owned less than the entire fee simple estate, the rentals and royalties were to be proportionately reduced. For reasons which will be explained, the contention is overruled. The terms of the lease are such as to grant to the lessees a determinable fee estate in the 54-acre tract as an entirety. Stephens County v. Mid-Kansas Oil and Gas Co., 113 Texas 160, 254 S. W. 290, 29 L. R. A. 566; Humphries-Mexia Co. v. Gammon, 113 Texas 247, 254 S. W. 296, 29 A. L. R. 607; Waggoner v. Sigler, 118 Texas 509, 19 S. W. (2d) 27. The instrument contains a clause of general warranty. The granting clause and the general warranty clause bind Alex in all respects the same as if he were the sole lessor named in the instrument. Moses v. Chapman, 280 S. W. 911; Baum v. McAfee, 59 Texas Civ. App. 55, 125 S. W. 984. As we have already seen, the fact that, in making the lease, Alex acted in his individual capacity makes no difference, for the lease purporting the grant of a determinable fee estate in the 54-acre tract as an entirety, and containing a general warranty, passed title commensurate with his power. Phoenix Assurance Company v. Deavenport, 16 Texas Civ. App. 283, 41 S. W. 399 (Writ ref.); Shell Petroleum Corporation v. Tippett, 103 S. W. (2d) 448

(Writ ref.) ; 14 Tex. Jur. p. 930; and cases heretofore cited. In addition to what we have just said, it may not be amiss to speak a word with particular regard to the clause, mentioned above, which provides for proportionate reduction of rentals and royalties. This clause is but a covenant respecting the contingency of failure of title, in whole or in part. Its legal effect is no greater than a similar covenant for the reduction of unpaid purchase money which is sometimes inserted in a deed which purports a grant of fee simple title to an entire tract of land. It does not limit the grant. Klein v. Humble Oil & Refining Co., 126 Texas 450, 86 S. W. (2d) 1077.

■ Another matter needs to be noticed. Counsel adverts to the fact that the community debt of Alex and Julia, which existed at the time the lease in question was made, amounted to but $10.32. The fact that this debt was of small amount did not relieve Alex of the duty to pay it; nor was his power as community survivor affected. In cases of this sort the amount of the community debt involved, except as it might bear on the question of fraud, is immaterial. Speaking on this subject, this Court in Manchaca v. Field, 62 Texas 135, said:

"The survivor being thus authorized to sell for the payment of community debts, a prima facie presumption of good faith ought to attend the exercise of the power. Such sales will be sustained, notwithstanding a very considerable disproportion between the value of the property sold and the amount of the debts, unless, indeed, the disproportion is so great as to evince an abuse of discretion and to authorize an inference of fraud on the rights of the heirs. Wenar v. Stenzel, 48 Texas 490."

A community survivor has the power to execute an oil and gas lease, in the usual form, for the purpose of paying community debts. Martin v. Dial, 57 S. W. (2d) 75, 89 A. L. R. 571. In the present instance, the record contains nothing to show the value of the property sold, at the time it was sold, except the recital of a cash down payment of ten dollars contained in the lease instrument itself. An abuse of discretion is not discovered by a comparison of this amount with the amount of the community debt of $10.32. The terms of the instrument show that the value of the property sold depended exclusively on the contingency of discovery and production of oil or gas in paying quantities, and that the accrual of rentals and royalties also depended upon future contingencies. In the very nature of the case, these terms do not furnish a standard for comparison.

Finding no error committed by the Court of Civil Appeals, the judgment of that court affirming the judgment of the trial court is affirmed.

Opinion adopted by the Supreme Court March 8, 1939.

Rehearing overruled April 5, 1939.