### TEXAS CO. v. PARKS et ux.

No. 15317.

Court of Civil Appeals of Texas.
Fort Worth.

Feb. 1, 1952.

Rehearing Denied Feb. 29, 1952.

Johnston S. Rowe and William N. Sands, both of Fort Worth, for appellant.

Rawlings, Sayers, Scurlock & Daly, of Forth Worth, for appellees.

RENFRO, Justice.

Suit was brought by appellees, L. D. Parks and wife, as owners and lessors, to terminate a lease and assignment thereunder and remove same as a cloud upon their title. From a judgment terminating the lease, because of failure of appellant, The Texas Company, to pay the rental provided in the lease, this appeal resulted.

The facts are undisputed. On February 4, 1950, L. D. Parks and wife executed an oil and gas lease to W. L. Simmons covering their undivided one-half interest in the E/2 of Sec. 208, Block D of the John H. Gibson Survey in Yoakum County, Texas. On February 10, 1950, Simmons assigned the lease to The Texas Company.

The lease was for a period of ten years from February 4, 1950, and for as long thereafter as oil and gas or other minerals were produced. The lease provided for the payment of $160 per year delay rental.

On January 18, 1951, appellant tendered to the First National Bank of Fort Worth the sum of $80 to be deposited to the credit of L. D. Parks et ux. to cover the annual rental for the privilege of deferring commencement of drilling operations for a period of twelve months from February 4, 1951. L. D. Parks refused to accept the $80, contending the proper amount of annual rental was the sum of $160. Operations for drilling on the E/2 of Sec. 208, Block D, John H. Gibson Survey, were not commenced on or before February 4, 1951.

Appellant did not pay or tender to L. D. Parks and wife, or to the First National Bank of Fort Worth, the sum of $160 to constitute the delay or annual rental on said lease. The contention of The Texas Company has been at all times since receiving the assignment from Simmons that "$80 is the correct amount."

At the time of the execution of the oil and gas lease on February 4, 1950, L. D. Parks and wife, Una W., were the owners of an undivided one-half interest in the property therein described. There has been no failure of title as to the leasehold interest in such undivided one-half interest.

The appellant presents its appeal on these points: (a) Under the proportionate reduction clause of the lease, appellant was entitled to reduce the rental in proportion to appellees' interest in the entire fee simple estate in said land; (b) the phrase "said land" refers to the physical premises constituting the E/2 of Sec. 208, or the whole land; (c) appellant was entitled to reduce proportionately the amount of rental stated in the rental clause notwithstanding there had been no failure of title to the undivided one-half interest granted and conveyed under the terms of the lease.

The three points raised by appellant may be summarized in one question, namely, whether, in the situation presented by the undisputed facts, appellant was entitled under the proportionate reduction clause to reduce proportionately the amount of rental stated in the rental clause.

In determining whether appellant was entitled to reduce proportionately the amount of the rental, we must ascertain, if possible, from the lease instrument the true intention of the parties. The intent of the parties, if it can be ascertained from the instrument, will prevail. Sun Oil Co. v. Burns, 125 Tex. 549, 84 S.W.2d 442.

Appellant cites King v. First National Bank of Wichita Falls, 144 Tex. 583, 192 S.W.2d 260, 263, 163 A.L.R. 1128, as authority for its contentions. In that case the granting clause of a warranty deed conveyed an undivided one-half interest in certain property which was then described as a whole. Certain royalty interest was reserved. The Supreme Court said, " * * * looking forward from the granting clause and backward from the reservation clause it seems evident that the terms 'following described land', 'hereinabove described land', 'said land', and 'premises', refer not to the one-half interest actually conveyed,

* * * but relate to the intervening paragraphs of the deed wherein the '1st Tract' and the '2nd Tract' are particularly described as a whole in units of 160 acres and 80 acres, respectively."

Different from the description in King v. First National Bank, supra, the lease before us conveys the whole leasehold interest of grantors in and to an undivided one-half interest in the E/2 of Sec. 208, Block D, John H. Gibson Survey. The only question before the court in the King case was the amount of royalty interest reserved by the grantor in a warranty deed. The question of rental was not involved. In the instant case the amount of annual delay rental agreed upon in an oil and gas lease is the only question to be determined.

Par. 4 of the lease provides that if drilling operations are not commenced within one year on said land, the lease shall terminate as to both parties unless the lessee deposit in the First National Bank of Fort Worth to the credit of lessors the sum of $160 rental.

In Par. 9, lessor agrees to warrant title to said land, and the same paragraph provides that if lessor owns an interest in said land less than the entire fee simple estate, then the rentals shall be reduced proportionately.

Looking forward from the granting clause and backward from the rental clause, we reach the conclusion that as to the rental, the lease referred to the undivided one-half interest of lessors, and when lessee agreed to pay $160 rental on said land, said land referred to the interest therein conveyed by lessor, namely, lessors' undivided one-half interest.

The agreement to pay $160 rental on said land referred to the undivided one-half interest in the whole tract and not to the 320 acres in its entirety.

The property referred to as the land is the same as that actually owned and conveyed by the lessors.

■ The delay rental clause is for the benefit of the lessee. The provision for payment of delay rentals is designed to enable a lessee who finds it undesirable to begin drilling on the agreed date to avert a forfeiture, and retain his rights by paying periodical rentals for the privilege of deferring operations. 31A Tex.Jur., pp. 247-8, Sec. 145.

The lease does not specify any particular rental rate per acre. On the contrary, it provides a lump sum payment to lessor of $160. If the parties had intended the rental to appellees to be any other sum, the lease could have so provided. The parties could agree upon any amount of rental they desired. In our opinion, it is inescapable that by the terms of the lease before us, it was the intention of the parties, and they agreed, that lessors would receive an annual rental of $160 for their interest conveyed. There is nothing in the lease to indicate that the parties were fixing the rental on a percentage or fractional basis, or in proportion to lessors' interest in the entire tract. It was an agreement to pay the lessors in the particular lease the lump sum of $160 per year rental. The language employed does not support the contention that lessee agreed to pay a total of only $160 to all the owners of the 320 acre tract.

It is admitted that at the time of the execution of the lease, appellees were the owners of an undivided one-half interest in and to the E/2 of Sec. 208, Block D, John H. Gibson Survey, and it is further admitted that there has been no failure of title as to the leasehold interest granted and conveyed by appellees.

Having determined that the lessee agreed to pay lessor $160 annual delay rental for the interest conveyed, it necessarily follows that appellant could not rely upon the reduction clause to reduce the payment from $160 to $80. The appellees' title has not failed. They owned the entire fee simple in what they conveyed, to-wit, their undivided one-half interest. Griffin v. Stanolind Oil & Gas Co., 133 Tex. 45, 125 S.W. 2d 545; Reeves v. Republic Production Co., Tex.Civ.App., 177 S.W.2d 1011, refused w. m.

The court did not err in holding that appellees were entitled to cancellation of the lease.

■ While appellant did not bring forward a point of error on the point, it argues

in its brief that appellees are estopped from asserting that the lease has terminated, citing Humble Oil Refining Co. v. Harrison, 146 Tex. 216, 205 S.W.2d 355. The facts of the instant case do not bring it within the rule as announced in the above mentioned case. In the instant case, appellant in its reply for admission, took the position that it owed $80, and that had been its position at all times. There was no pleading of mistake, fraud or accident, no plea for reformation, and no offer to pay more than $80. Under the facts of this case, appellees are not estopped to declare the lease terminated.

The judgment of the trial court cancelling the lease and removing said lease and assignment as a cloud on appellees' title is affirmed.

Affirmed.

### On Motion for Rehearing

HALL, Chief Justice.

Hazarding the probability of repeating findings expressed in our original opinion, we shall undertake to explain in more detail the reason for our holding, and, at the same time, answer some of the vigorous contentions advanced in appellant's motion for rehearing.

The scrivener used an oil and gas lease form known as "Producers 88—Revised 8–42, Texas Standard Lease Form," which in our opinion was prepared for the purpose of leasing from a lessor his entire interest in a tract of land, regardless of whether he owned the whole tract or only a proportionate part thereof. The provisions of each paragraph are so synchronized, one with the other, in order for the scrivener to describe the tracts of land involved as a whole; then after the parties have agreed upon the amount of annual delay rental to be paid upon the whole tract to insert such amount in the rental clause, so that under the provisions under the last sentence in the proportionate reduction clause the lessee will pay rental in proportion to the amount of interest lessor has in the land. Evidently, for convenience, this or a similar form is consistently used by the oil industry and its niceties are well recognized by this court. This form of preparing an oil and gas lease, however, is not necessarily suitable where the lessor owns a lesser interest than the whole tract but does not intend to grant a lease on all of his interest. Neither should it become effective where the lessor owns the entire tract but is only leasing a portion thereof.

Be that as it may, let us review the provisions of the lease as written, and undertake to distinguish them from the above formula as outlined. We find the scrivener using a more orthodox method of describing the real estate, in that he only describes the interest lessor is to convey, which description is referred to in the instrument as "said lands" or "lands above described." Then we find in paragraph 4 the parties agreeing that $160.00 is the amount of annual rental to be paid on *said land*. At this point, no complication has arisen. However, under the last sentence in said paragraph 4, 320 acres more or less are referred to as the total amount of land considered for the purpose of executing releases and assignments, etc., by lessee. As to this particular phase of the written instrument, the scrivener was following the first formula, supra, which, among other things, requires that the tract be described as a whole. Thus, we have our first real diversity as the 320 acres last mentioned conflict with the description of the land conveyed in the granting clause. No doubt, the scrivener should have continued to follow his orthodox rule by describing *said land* as being *a one-half undivided interest in 320 acres more or less*.

Having the main issue in mind, the substance of appellant's argument is that we should consider the description in the granting clause as though it did cover the entire east half of the section in question. While appellant, in substance, is asking us to double the amount of acreage called for in the granting clause, yet it is not willing for us to raise the amount of rentals called for in the rental clause in the same proportion. If we were to change the number of acres in the granting clause without changing the amount of rental due under the rental clause, then we would be writing a new lease for the parties, which, under the

law, the court is prohibited from doing. In other words, by applying such construction, we would reduce by fifty per cent the amount of rentals which the instrument calls for to be paid upon said proportionate interest in the whole tract of land.

■ The saving clause, or what is here termed the proportionate reduction clause, is designed to protect the lessee in the event the lessor owns a lesser interest in the land which he undertakes to convey.

While seeking to ascertain, from the four corners of the instrument, the true intention of the original parties pertaining to their agreement relative to the amount of delay rentals which might become due lessor, we would not be applying the "common-sense rule" by finding that both parties agreed to rely upon said proportionate reduction clause to determine such amount.

In our original opinion we undertook to differentiate the facts in this case from those in the King case by showing that the grantor in the King case, even though he claimed to have only owned a one-half interest in the land, specifically retained an interest in the tracts enumerated by describing them as a whole in their respective units.

The discrepancy, supra, makes the instrument somewhat ambiguous, but appellant is in no position to complain of such ambiguity because it has vouched for correctness of the instrument by electing to stand upon its contents without a request for reformation. Then too, appellant evidently has construed such conflicting statement found in paragraph 4, supra, as being a *one-half undivided interest in 320 acres more or less* by admitting such was the amount of acreage conveyed in the lease; and the further admission that title to said one-half interest has not failed.

■ We do not agree with appellant's contention "that where a lease covers a fractional or undivided interest, lessee may under the proportionate reduction clause reduce the rental stated in the lease," as being the law applicable in a case where no greater interest in a tract of land is described than the portion being leased. Neither do we agree with appellant's argument that

the effect of our opinion "is to place in jeopardy the right of the lessee to reduce royalty under every producing oil and gas lease in this State in which an undivided or fractional interest was described, rather than the entire fee simple interest, in the granting clause." Looking to the description of the land leased, we believe the lessee, or his assigns, would have no difficulty in determining the amount of royalty interest which appellees should receive if and as oil is produced from said land. We need not state here that a formula used or the reason given for determining amount of rental due under a lease should necessarily be the same formula used to ascertain proportionate royalty interests in the oil if and when produced. Nothing in our opinion conflicts with or changes the method of determining royalty and mineral interest as set out in the King and Harrison cases cited in our original opinion.

■■ It has been held that delay rentals on oil and gas leases are rents, that they accrue by mere lapse of time and do not depend on the finding or production of oil or gas and do not exhaust any substance from the land. Rentals are unlike bonus payments, which have been held to be advance royalties. Rental pay is for additional time in which to acquire a limited dominion over the land. It has also been held that rental payments derived from oil and gas leases on separate property become community and are considered personal property. McGarraugh v. McGarraugh, Tex.Civ.App., 177 S.W.2d 296. To the contrary, bonus payments made for oil and gas leases upon separate property remain separate. Lessing v. Russek, Tex.Civ.App., 234 S.W.2d 891; 23 Tex.Jur., p. 123.

■ Deeds to lands and minerals convey future rentals due thereon, whether mentioned in the instrument or not. This is due to the fact as stated in the case of Harris v. Currie, 142 Tex. 93, 176 S.W.2d 302, 305, wherein Harris conveyed all of his right, title and interest in his mineral estate: "It would be unreasonable to say that R. H. Harris can collect delay rentals on the thing he has entirely parted with, when such rentals accrued after he had divested him-

self of such entire title. If the owner thereof sells land already rented or leased for ordinary rental or lease purposes, the purchaser thereof would certainly be entitled to the rent or lease money accruing after his purchase * * *", and is not due to the fact that rentals are appurtenances or hereditaments to land. We say this because a lessee is neither obligated nor compelled to pay rentals. 31A Tex.Jur., p. 264, sec. 153.

The holding by our Supreme Court in the case of Humble Oil & Refining Co. v. Harrison, 146 Tex. 216, 205 S.W.2d 355, is relied upon by appellant for authority to reduce the stated rentals which its assignor agreed to pay appellee. The Harrison case is too complicated for a full discussion here, but it is there noted in the court's opinion, 205 S.W.2d on page 360, under syllabi 4 and 5, "The land previously described in the deed is the *entire* 1074.4 acres. One-half of the delay rentals payable on the land means one-half of the entire rentals and not one-half of a fractional interest therein", citing the King case, supra, and others.

If the description in the lease under discussion had been the same as the description in the assignment from W. L. Simmons, the original lessee, to appellant, to wit: "All of the East ½ of Section 208, Block D, John H. Gibson Survey," then in our opinion the proportionate reduction clause would apply; that is, if appellees owned a lesser interest than the whole of said land described. It is undetermined by a reading of the instrument as to whether appellees owned a greater interest in the east one-half of Section 208 than the one-half conveyed to appellant's assignor.

Since appellees only leased a one-half interest in the east one-half of the section in question to appellant's assignor, could it be contended by appellant that under the provisions of paragraph 9, the proportionate reduction clause, to wit: "Lessor hereby warrants and agrees to defend the title to *said land* and agrees that Lessee at its option may discharge any tax, mortgage or other lien upon *said land* and in event Lessee does so, it shall be subrogated to such lien with the right to enforce same and apply rentals and royalties accruing hereunder toward satisfying same * *," that appellees have obligated themselves to defend the title to the other one-half interest in the land which they neither describe as owning nor leasing? Is it further contended by appellant that it could pay the taxes, mortgages or other liens that may be due upon the other half of said undivided interest in *said land* and by subrogation rights recover from appellees such indebtedness so paid, even though the other one-half interest in *said land* may not have been owned by appellees?

Neither appellees nor appellant offered any extraneous evidence to aid the court in determining the facts of this case. It is not shown who drew the instrument or furnished the printed form in order that the court might construe same most strongly against such person. The following general rule that is used in construing written instruments pertaining to real estate, to the effect that the instrument must be construed most strongly against the lessor, does not necessarily apply as to oil and gas leases. As stated in 31A Tex.Jur., p. 178, sec. 108: "In many instances a contrary rule has been followed and the lease construed most strongly against the lessee." Obviously this rule does not apply where the lease is free from ambiguity.

Most other established rules governing the courts while construing description of lands in conveyances do generally apply to oil and gas leases. Therefore it is not amiss for an oil and gas lease to contain as near as possible a proper and accurate description of the land to be leased. 31A Tex.Jur., p. 146, sec. 83, p. 199, sec. 122. The lease should also definitely define the lessee's duties and obligations in respect to continuing the life thereof, that is, in the instant case, to either commence a well or pay the "agreed delay rentals." 31A Tex. Jur., p. 218, sec. 134.

All emphases are ours.

Appellant's motion for rehearing is overruled.