**WILSON et al.**

v.

**MEREDITH, CLEGG & HUNT et al.**

No. 4971.

Court of Civil Appeals of Texas.

Beaumont.

April 15, 1954.

Rehearing Denied June 2, 1954.

512

Buchanan & Stover, Silsbee, for appellants.

Cecil, Keith & Mehaffey, James F. Parker, Beaumont, for appellees.

R. L. MURRAY, Chief Justice.

This is an appeal from a judgment in the district court of Hardin County rendered upon an instructed verdict in behalf of the appellees, who were the defendants in the trial court. The suit was brought by the appellants in trespass to try title for a particular 160 acres of land in the Henry Binns League in Hardin County. Plaintiffs below pleaded a formal action of trespass to try title and also specially pleaded their title. They also pleaded various statutes of limitation but on appeal they do not contend that there was any evidence which sustained such pleas of limitation. The defendants below filed formal pleas of not guilty, various other pleas, and the several statutes of limitation. They also filed a plea of laches. In their brief on appeal appellees contend only, as to the various statutes of limitation, that the evidence sustained their plea under the 3-year statute of limitation. At the close of all the evidence both parties, plaintiffs and defendants, filed motions for instructed verdict. The plaintiffs below asked for an instructed verdict for title and possession of the entire 160 acres, and in the alternative for

title and possession of an undivided one-half interest in the 160 acre tract. This motion was overruled. The motion of defendants below was granted and judgment was rendered on such instructed verdict that the plaintiffs below take nothing in their suit against defendants below as to the land in controversy. Plaintiffs below have duly perfected their appeal to this court for review of the judgment.

The appellants bring their appeal under the following four points of error:

## First Point

Accepting as true all the evidence in the case most favorable to plaintiffs, the court erred in granting defendants' motion for instructed verdict for the reason that the deed in defendants' chain of title from N. B. Hooks to Sarah E. Fuller was void, or if not void, became barred by laches.

## Second Point

Accepting as true all the evidence in the case most favorable to plaintiffs, the trial court erred in granting defendants' motion for instructed verdict, for the reason that if any interest passed by the purported deed from N. B. Hooks to Sarah E. Fuller it was an equitable right to acquire title, or a quitclaim, and the defendants took with constructive notice of and hold subject to plaintiffs' one-half interest in the land in controversy.

## Third Point

That trial court erred in overruling plaintiffs' motion for instructed verdict for all the land in controversy.

## Fourth Point

Alternatively, the trial court erred in overruling plaintiffs' motion for instructed verdict for an undivided one-half interest in the land in controversy.

It was stipulated that the common source of title to the land involved in this lawsuit, as between plaintiffs and defendants, is John G. Woldert, sometime spelled Waldert.

By instrument dated April 18, 1881, J. G. Woldert executed an instrument to N. B. Hooks, which recited that "in consideration of the sum of $1.00 to me paid the receipt of which is hereby acknowledged and the further consideration of his having lived on said land as tenant have this day granted, bargained, and sold and released unto N. B. Hooks of the County of Hardin and the State of Texas, 160 acres of land out of the Henry Binns League of land and described as follows, to be run in a square so as to include his entire improvements where he now resides together with all and singular the improvement hereditaments and appurtenances to the same belonging or in any wise incident or appertaining thereto."

By instrument dated September 3, 1892, N. B. Hooks, in consideration of the sum of $160 to him paid, granted, sold and conveyed unto Sarah E. Fuller "all that certain tract of land in Hardin County, Texas, to-wit:

"One Hundred Sixty acres it being a part of a league of land originally granted to Henry Binns. The same to be in a square form and to include all the improvements occupied by me, the said N. B. Hooks, in 1881 and deeded by J. G. Woldert to N. B. Hooks, the 18th day of April, 1881, which said deed is hereby made a part of this conveyance." This instrument contained words of general warranty in the usual form.

It was stipulated that the plaintiffs in this lawsuit are the heirs at law of Nick or N. B. Hooks, and are also the heirs at law of his first wife, Nancy Sheffield Hooks; that Nancy Sheffield Hooks died intestate on May 30, 1888, and that N. B. Hooks died intestate on September 19, 1912. Plaintiffs are suing for the interest which they acquired as heirs of N. B. Hooks and Nancy Sheffield Hooks.

The appellees claim under the above deed from N. B. Hooks to Sarah E. Fuller. All of the principal points of controversy in this litigation arise from the wording of the

latter instrument, the deed from Hooks to Sarah E. Fuller.

The parties stipulated as follows:

"It is stipulated that the surrounding land on the east and on the south and on the west and on the north except as to what is designated on defendants' Exhibit No. 1, as the Pat Wolf 25 acres, of this 160 acres for many years has been owned by the Houston Oil Company of Texas and the American Production Corporation and before them, the Southwestern Settlement & Development Company, and that such ownership of such surrounding land was acquired under a regular chain of title under John G. Woldert. That they have recognized the boundary lines of the 160 acres and their surveyors have put markers at the corners of the 160 acres involved in this lawsuit. It is further stipulated that the inception of the title to the land surrounding the 160 acres of land involved in this suit, had its inception in the deed from John G. Woldert to A. W. Carlisle, dated April 18, 1881, and recorded in Vol. J, Pages 159–160, of the Deed Records of Hardin County, Texas, and such deed is made a part of this stipulation, word for word."

Such deed conveys the entire Binns League, save and except "160 acres deeded by me to N. B. Hooks to include his improvements" and other tracts not material to this discussion. The evidence seems to be undisputed that the land which N. B. Hooks selected out of the Binns League was the land for which plaintiffs below filed their suit and that the lines about said tract are now marked with a yellow painted line; that there was a marked line around the said N. B. Hooks tract in about 1884; that the improvements of N. B. Hooks on the property were inside that line; that he had a house and barn on the land and had about 15 or 20 acres of it under fence.

The field notes of a survey of 100 acres made for one Thomas Cravey on December 11, 1893 contains the following descriptive matter: "Beginning at the N W cor of N. B. Hooks Sur. Pine brs. N 59 W 3.6 vrs."

The surveyor's certificate recites that "the foregoing survey was actually made by me on the ground."

From the marriage license records of Tyler County, Texas, it was shown that N. B. Hooks and Nancy Sheffield Hooks were married on August 11, 1865.

In evidence are three instruments dated in 1909 showing that J. M. Fuller acquired all the interest of Sarah E. Fuller in the 160 acre tract which she acquired from N. B. Hooks.

Also in evidence are the following deeds:

A deed from J. M. Fuller to Tom Cravey dated in 1908 conveying "all that certain tract of land in Hardin County, Texas, to-wit: One hundred and sixty acres, it being part of the league of land originally granted to Henry Binns, the same to be in a square form and to include all improvements occupied by N. B. Hooks in 1881, and being the same tract of land deeded by J. G. Woldert to N. B. Hooks, April 18, 1881, which said deed is hereby made a part of this conveyance;"

Deed from T. C. Cravey to Campbell Baillie dated March 20, 1911 conveying the 160 acres of land out of the Henry Binns League in Hardin County; deed to Tom C. Cravey, (who is identical with T. C. Cravey) by J. M. Fuller on January 25, 1908;

Deed from Campbell Baillie to C. S. Jackson dated February 25, 1919, which deed contains the description by metes and bounds of the land sued for.

From the deed of Baillie to Jackson, dated February 25, 1919, down to the time of the filing of this lawsuit on October 14, 1952, a great number of conveyances to varied interests in the 160 acre tract were shown. Seven of such conveyances to different persons were made between such date and April 13, 1938. Beginning March 2, 1950 and continuing throughout 1950, 1951, and 1952 there were 48 conveyances of various mineral interests, royalty interests and pooling agreements and oil and mineral leases on the 160 acres in suit.

There seems to be no question that N. B. Hooks was in possession of the land when he got the deed from Woldert and that he made his selection and ran his lines on a 160 acre tract and that the lines which he laid out at that time are substantially the same as those of the tract in suit. It seems also to be undisputed that Sarah E. Fuller took possession of this same 160 acres under her deed from Hooks and lived there for some time, and that a pond or lake thereon was known as the Fuller pond; and that she had tenants on the place who farmed it for at least three years.

The land of the other owners of the remaining portion of the Henry Binns League not deeded by Woldert to Hooks is well marked by the owners of such other lands, who placed markers at the corners of the 160 acres of the tract selected by Hooks. The lines and corners of the Hooks tract, later known as the Fuller place, are well marked and have long been recognized by adjoining property owners.

From the year 1892 to the date of filing of this suit the appellees, and those under whom they claim, paid taxes on the land with very few delinquent payments. They cut the timber on the lands and these and other acts of dominion on their part were open and hostile to any right which the appellants might have had for 60 years. The appellants for 60 years before filing the suit did nothing which would in any way indicate any claim of ownership of the land on their part.

Shortly after N. B. Hooks made his conveyance to Sarah E. Fuller he moved from the land in suit to a place in Tyler County. After a great many conveyances to smaller portions of the 160 acre tract had been made and filed for record and mineral leases were made and filed for record on the land, considerable oil development began and oil drilling operations began in 1951. Two wells were drilled on the property, the cost of which operations was about $250,000. These drilling operations were made at a time when the land was known as wildcat territory, that is, un-proven territory as to production of oil and gas. Production of oil and gas was made in commercial quantities and during the year, July, 1952 through July, 1953, a total of $211,000 of oil, gas and distillate was produced and sold from the property.

■ We believe that legal title to the 160 acres in suit vested in N. B. Hooks when he had his land selected and his lines laid upon the ground in the Henry Binns League. Dull v. Blum, 68 Tex. 299, 4 S.W. 489; Nye v. Moody, 70 Tex. 434, 8 S.W. 606; Turner v. Hunt, 131 Tex. 492, 116 S.W.2d 688, 117 A.L.R. 1066.

■ We are also satisfied that under the facts above outlined the deed from Hooks to Fuller passed legal title to Sarah E. Fuller to the 160 acres of land which Hooks had acquired from Woldert by virtue of his deed and by his selection of his tract of land under such deed. The words contained in the descriptive portion of the deed from Hooks to Fuller, "deeded by J. G. Woldert to N. B. Hooks the 18th day of April, 1881, which said deed is hereby made a part of this conveyance," are not intended to define or qualify the estate or interest being conveyed by Hooks to Sarah E. Fuller, but were inserted in the deed to identify the land conveyed as the land which Hooks acquired from Woldert. See: Duhig v. Peavy-Moore Lumber Co., 135 Tex. 503, 144 S.W.2d 878. Such wording in the Hooks to Fuller deed should not be construed as granting to Fuller only the right to make a selection of 160 acres out of a larger tract owned by the grantor. Under the facts before us in this case Hooks owned no part of the Henry Binns League except the 160 acres conveyed to him by Woldert. Whether Hooks' survey of his 160 acre tract was made before or after his deed to Fuller on September 3, 1892 is of no importance. The evidence seems to establish that the lines around the Hooks place were established and well marked as early as 1884. The parties stipulate, however, that the boundary lines were marked prior to 1893, but since Hooks did not own at any time but this one tract of land in the Binns League when he con-

veyed 160 acres out of the Binns League which had previously been conveyed to him by Woldert he conveyed everything he had and owned in the Binns League to Fuller. The reference in the deed from Hooks to Fuller to the deed from Woldert to Hooks shows that the intention of the parties was to convey the Hooks land in the Binns League to Fuller.

This interpretation and construction of the Hooks to Fuller deed is in keeping with the following rules of law relating to·the construction of deeds:

(1) A sound rule of construction requires that interpretation under which the deed will be valid and operative in preference to a construction which will nullify such deed. Peavy-Moore Lumber Co. v. Duhig, Tex.Civ.App., 119 S.W.2d 688, affirmed at 135 Tex. 503, 144 S.W.2d 878.

(2) The language of a deed is the language of the grantor, and if there is any doubt as to its construction, such doubt should be resolved against the grantor. Peavy-Moore Lumber Co. v. Duhig, supra; Bumpass v. Bond, 131 Tex. 266, 114 S.W.2d 1172.

(3) The cardinal rule in the construction of deeds is that the intention of the parties is to be ascertained and if not forbidden by law, effectuated. Pierson v. Sanger, 93 Tex. 160, 53 S.W. 1012.

(4) A description in a deed is sufficient if it refers to a deed or other writing which gives sufficient data for identification of the land.

(5) The deed is sufficient if it furnishes within itself, or by reference to some other existing writing, means or data by which the particular land being conveyed may be identified with reasonable certainty. Broaddus v. Grout, Tex.Sup., 258 S.W.2d 308, 309 and cases cited.

We believe that the words of description in the Hooks to Fuller deed contained a key by its reference to the Woldert to Hooks deed to the means or data by which the particular 160 acres of land owned by Hooks in the Henry Binns League was identified with reasonable certainty. The appellants' first and second points are overruled.

Under their third point, and partially under their second point also, appellants contend that even though legal title passed to Sarah E. Fuller under the Hooks to Fuller deed, the appellees have only the title of N. B. Hooks, himself, and that they, the appellants, as the heirs of Nancy Sheffield Hooks, the wife of N. B. Hooks, who died prior to the date of the Hooks to Fuller deed, are the heirs of Nancy Sheffield Hooks and as such are the owners still of an undivided one-half interest. This point is overruled. Hooks acquired legal title to the land in his own name even though it was community property of himself and his wife, and the heirs of his deceased wife have an equitable title only. Clayborn v. Gambill, Tex.Civ.App., 87 S.W.2d 508, writ refused; McClenny v. Humble Oil & Refining Co., Tex.Civ. App., 179 S.W.2d 798, writ refused. It is well settled in Texas now that an innocent purchaser for value of the legal title of land will prevail over a prior equitable title. Clayborn v. Gambill, supra; Buckalew v. Butcher-Arthur, Inc., Tex.Civ.App., 214 S.W.2d 184, writ refused. Under the Clayborn v. Gambill and Buckalew v. Butcher-Arthur cases, supra, the burden was upon the holders under the equitable title of the heirs of Mrs. Hooks to prove that the original purchaser of the legal title from N. B. Hooks was not an innocent purchaser thereof, for value. Such heirs of Mrs. Hooks were also under the burden, under the holding in Buckalew v. Butcher-Arthur, supra, to prove that the ultimate purchaser for value took with notice of the wife's community interest and so did not acquire title in good faith and they also had the burden to show that each of their predecessors in title also had such notice or took in bad faith. There is an entire absence of such proof in this record and the appellants do not contend that there is such proof.

The appellees, in their fifth counter-point, contend, in opposition to the appellants' third point, that the community estate of N. B. Hooks and Nancy Sheffield Hooks owed community debts at the time of her death in 1888, which were not paid at the time N. B. Hooks conveyed to Sarah E. Fuller in 1892, and, by reason of such debts N. B. Hooks, as the survivor in community, was authorized to convey to Sarah E. Fuller all the right, title and interest of such community estate to the 160 acres involved in this suit. We believe the record supports this contention of the appellees. There was evidence of a community indebtedness at the time of Mrs. Hooks' death. The law gives such survivor in community the right to sell all community assets to pay community debts and the amount of the debt as compared to the value of the land sold is immaterial and it is likewise immaterial whether the survivor conveyed in his own name or as survivor. The survivor may sell the community property, including the homestead, in payment of community debts. The purchaser is not required to see to it that the proceeds of the sale are applied to the payment of the community debts. The survivor is not required to exhaust the personalty before selling the estate of the community. Stone v. Jackson, 109 Tex. 385, 210 S.W. 953 and cases cited therein. Griffin v. Stanolind Oil & Gas Co., 133 Tex. 45, 125 S.W.2d 545 and cases cited; Iiams v. Mager, Tex.Civ.App., 216 S.W. 422; Jones v. Harris, Tex.Civ.App., 139 S.W. 69; Kinard v. Sims, Tex.Civ.App., 53 S.W. 2d 803; Burnham v. Hardy Oil Co., 108 Tex. 555, 195 S.W. 1139, 1143 and cases cited.

In addition to the above well established rules of law, when positive proof of the existence of community debts is shown, there is also a presumption that after the passage of a substantial length of time such a conveyance by a survivor in community was made in order to pay community debts. We think in this case that after a lapse of about 60 years it must be presumed that the sale of the land by Hooks to Fuller was made for the purpose of paying community debts. See: Baldwin v. Roberts, 13 Tex.Civ.App. 563, 36 S.W. 789; Hensel v. Kegan, 79 Tex. 347, 15 S.W. 275; Brown v. Elmendorf, Tex. Civ.App., 25 S.W. 145.

The appellees also contend under their sixth point that if the appellants had any equitable title, laches has estopped and barred them from asserting their cause of action under either Nancy Sheffield Hooks or N. B. Hooks and they say that to enforce their stale demand at this time would be inequitable, unconscionable and would work a disadvantage to the appellees so that they could not be restored to their former state existing prior to the filing of this suit in 1952. We think under the facts as outlined at the beginning of this opinion there is ample evidence in the record, showing use and occupancy of the land by appellees and those under whom they hold, at various times for the 60 years preceding the filing of this suit by the appellants to bring the case within the doctrine of laches and stale demand and bar the appellants from prosecuting at this late date their claim as heirs of Mrs. Hooks, an equitable title. Laches is similar to estoppel and rests upon the theory that because of the staleness of the demand, the defendant would be unconscionably prejudiced if the claim were not cut off. A claim is subject to its bar where the following facts are disclosed:

1. Conduct on the part of the claimant or one under whom he claims, giving rise to the situation of which complaint is made, and for which the complainant seeks a remedy.

2. Delay in asserting the complainant's right, the complainant having had knowledge or notice of the defendant's conduct and having been afforded an opportunity to institute suit.

3. Lack of knowledge or notice on the part of the defendant that the complainant would assert the right on which he bases his suit.

4. Injury or prejudice to the defendant in the event relief is accorded to the complainant or the suit is not held to be barred. McDonald on Civil Practice; Vaughn v. Kiesling, Tex.Civ.App., 150 S.W.2d 435; Brady v. Garrett, Tex.Civ. App., 66 S.W.2d 502; Huffington v. Doughtie, Tex.Civ.App., 113 S.W.2d 343; Ross' Estate v. Abrams, Tex.Civ.App., 239 S.W. 705; Abrams v. Ross' Estate, Tex. Com.App., 250 S.W. 1019.

■ There is no doubt but that the conduct of N. B. Hooks and his family in the subject case amply provides the conduct giving rise to the situation of which complaint is made, it being the first requisite as set out by McDonald above. It is undisputed that Hooks made a conveyance of this property to Fuller, and that Hooks then left the 160 acres upon which he had been living and which he had conveyed, and took his family to Tyler County and never returned to Hardin County. It is likewise in evidence that the Fullers went into possession of said property, cultivated same, and were the first possessors under the conveyance from Hooks, of a long line of owners and possessors of the subject property. Obviously the conduct of Hooks gave rise to the situation now complained of by the plaintiffs.

It is a matter of fact that the heirs of Hooks have waited some 60 years before prosecuting their suit, and that they all had ample knowledge of the fact that Hooks had made his conveyance to Fuller, and if they had been at all interested, they could have inspected the property and would have seen that the Fullers and their successors in title were in actual possession of the property. Clearly there has been an inexcusable delay and obvious knowledge or notice on the part of the heirs of Hooks that the Fullers and their successors in title were in possession of the property and maintained dominion thereover as owners. As a matter of fact, this tends to point up the obvious understanding of all the Hooks heirs that N. B. Hooks had actually made a valid legal conveyance of this property,

or they undoubtedly would have asserted their claims against the Fullers immediately upon the Fullers taking possession thereof. The above requisite No. 2 is supplied by such facts of this case.

It is likewise obvious that the appellees in this case had no knowledge or notice that the heirs of N. B. Hooks would assert their claim against them as there was absolutely no way for them to have any knowledge that there might be a claim. The testimony of the oil operators and owners of this property is undisputed that they would not have spent large sums of money in leasing, developing, and producing oil, gas and other minerals from this property had they thought or suspected that there might be a claim of ownership made against said property. Likewise, the many transfers of the many interests in this property would never have been consummated on a basis other than an assumption of clear legal title without cloud. Very obviously requisite No. 3 is amply supplied by the facts of this case.

The presence of McDonald's requisite No. 4 in the present case has been amply discussed and need not be elaborated upon again.

Thus, all four of McDonald's requisites necessary to invoking the doctrines of laches, stale demand, and estoppel against the appellants in this case are present.

■ Under their seventh point the appellees contend that the action of the trial court in granting their motion for instructed verdict should be sustained because they show title in themselves under the 3-year statute of limitation. There was evidence in the record as to the Shephards' farming the place as tenants under the Fullers for three years in succession but this alone would not be sufficient to warrant instructing a verdict on the issue of limitation. We are rather inclined toward the view that such evidence, though undisputed, would go so far only as to raise a question of fact for the jury to decide. We believe, however, that the ac-

tion of the trial court was correct for the reasons given above in this opinion, and this point is of no importance to a determination of this appeal.

We believe the action of the trial court was correct in instructing a verdict and rendering judgment that the appellants take nothing by their suit, and the judgment is accordingly affirmed.