## LATHAM et al. v. JORDAN. (No. 1660.)

Court of Civil Appeals of Texas. Beaumont. March 6, 1928.

Rehearing Denied March 14, 1928.

**1. Trusts ⬤⟳44(1)—Evidence sustained verdict that plaintiffs' grandfather did not create trust by giving plaintiffs' uncle money to be held for plaintiffs.**

In suit to establish trust against plaintiffs' deceased uncle's estate, on theory that plaintiffs' grandfather gave uncle $12,000 to be held by him in trust for plaintiffs, to be paid to them on uncle's death, evidence *held* to sustain jury's verdict that no trust was created.

**2. Witnesses ⬤⟳380(5)—Letter held inadmissible to impeach plaintiffs' witness, where plaintiffs were not shown to be surprised at testimony.**

Where bill of exceptions did not show affirmatively that plaintiffs were surprised at their witness' testimony, exclusion of letter alleged to have been written by witness, offered for purpose of impeaching witness, *held* not error.

⬤⟳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**3. Evidence ☞121(1)—In suit to establish trust against plaintiffs' uncle's estate, evidence regarding alleged letter from uncle to plaintiff mentioning trust, and plaintiff's conversation with witness regarding it, held properly excluded as not res gestæ.**

In suit to establish trust against plaintiffs' uncle's estate, in which plaintiffs claimed uncle had written letter to one of plaintiffs in reply to plaintiff's letter, in which uncle stated that plaintiffs were to get money left with him by plaintiffs' grandfather, evidence of witness, who had served in army with plaintiff and assisted him in writing will, referred to in letter, regarding alleged letter from uncle, and what plaintiff had said to witness regarding letter, *held* properly excluded as not res gestæ.

**4. Trusts ☞42—In suit to establish trust, admitting letters from plaintiff, not suggesting alleged trustee held money in trust, held not error.**

In suit to establish trust against plaintiffs' uncle's estate, on theory that plaintiffs' grandfather had given uncle sum to be held in trust for plaintiffs, admitting letters from plaintiff to uncle of confidential nature, asking for loan of money, telling him of his business situation, etc., *held* not error, since they were probative evidence against the theory of trust.

**5. Trusts ☞42—Admitting account books and bank books of alleged trustee to negative theory of trust held not error.**

In suit to establish trust against plaintiffs' deceased uncle's estate, on theory that plaintiffs' grandfather had given uncle $12,000 to be held by him in trust for them, admitting account books and bank books of uncle *held* not error, where they were material on the issue whether the money had been received in trust.

**6. Parties ☞95(6)—Where all parties treated defendant's answer as being for her individually and as executrix, court properly permitted amendment accordingly.**

In suit against J., individually and as executrix of the last will and testament of her deceased husband, to establish trust against his estate, where court and all parties treated answer filed by defendant as being not only for her individually, but also in her representative capacity, it was within discretion of court to permit an amendment by which defendant answered in both capacities.

Appeal from District Court, Harris County; Chas. E. Ashe, Judge.

Suit by James O. Latham and others against Mrs. Cora Jordan, individually and as executrix of the last will and testament of her deceased husband, G. W. Jordan, to establish a trust against his estate. From a judgment for defendant, plaintiffs appeal. Affirmed.

C. G. Krueger, of Bellville, and Allen B. Hannay and Wagner & Wagner, all of Houston, for appellants.

W. P. Hamblen and Geo. D. Sears, both of Houston, for appellee.

WALKER, J. This suit was filed April 1, 1924, by James O. Latham and his two sisters against Mrs. Cora Jordan, individually and as executrix of the last will and testament of her deceased husband, G. W. Jordan, who died in May, 1920, to establish a trust against his estate in the sum of $12,000, with interest at 6 per cent. per annum from February 1, 1903. Defendant answered by general and special demurrers, general denial, and pleas of limitation. By supplemental petition plaintiffs pleaded a letter purporting to be from G. W. Jordan to James O. Latham, dated July 24, 1918, as follows:

"G. W. Jordan, Investments.
"307 Houston Power & Lighting Co. Bldg.
"Phone Preston 2503.
                    "Houston, Texas, 7/24, 1918.
"Mr. J. O. Latham.
"Dr. Oliver.
"Your letter of July 22 received with your will inclosed and I must say the instrument is well composed. I hope you will live to get through the war and come out all right. It reminds me of my will. In it I provided for you three children. You are to get twelve thousand dollars with all accrued interest that father left with me for Ida and her children a few years before his death. I have kept it in good loans most all time at ten per cent. per annum. It ought to amount to at least thirty thousand dollars by now. You three children will get this money divided equally between you. Cora is going to raise hell about it for she is afraid I am going to give the Latham children part of my property at my death. You do not need any money much before you are thirty yrs. old. Some time ago you wrote me you children were going to sue and break father's will where Ida was disinherited. You must never do this boy for I will not let you. Let that will stand as it was made. I am taking care of you children at my death. At times my arm is weak and I can hardly write. I sold the Hare farm for twenty thousand five hundred dollars. If you had of stayed on this ranch I intended for you to have it at my death, but now you and the girls can have it in money between you. I don't blame you for leaving the ranch for it was a hell of a place to live. Well, boy, be a good soldier and obey your superiors. Get off and visit us soon. When you are discharged I want you to come and live with us and help me in my business if Cora don't raise too much hell. Write me soon.
"Yours very truly,          G. W. Jordan."

This supplemental petition was answered by a plea of forgery. The theory of the plaintiffs was that their grandfather, John Jordan, having disinherited their mother, gave to their uncle, G. W. Jordan, $12,000 to be held by him in trust for them, and to be paid to them on the death of G. W. Jordan. In answer to special issues, the jury found that no such trust was created. This appeal was duly prosecuted by the plaintiffs from the judgment entered against them on that verdict.

[1] Appellants attack the verdict of the ju-

ry as being without support. This assignment is overruled. Their father testified that he had received letters from G. W. Jordan acknowledging the trust in the sum of $12,000, but was unable to find the letters. On the evidence before us the reputation of this witness for truthfulness and veracity was very bad. Judge J. V. Meek, a witness for appellants, testified that he knew G. W. Jordan, and had been his attorney in many matters over a long period of years. He said that Mr. Jordan had talked with him about this trust.

"He told me that he had a brother-in-law that wasn't worth a damn, and that his father had left his sister's money to him, and that he had this boy and girl, nephew, back there. He told me that he had their money and that at his death they were going to get it, and he wanted to be sure of it."

Judge John M. Cobb, a witness for appellants, testified that he also had been attorney for Mr. Jordan, and that Mr. G. W. Jordan had talked with him about his father's estate. He said:

"Mr. Jordan was reared in Alabama, and he made one or two trips that I remember back there in the settlement of his father's estate—might have been his mother's estate, too; I don't know. He told me about what he had got. At one time he told me that he had a sister, that his father had disinherited on account of some ill feeling toward her husband, and that some money he got from the estate he wanted, when he died, to go to his side of the house, and especially those children, the Latham children, the plaintiffs in this suit, J. O. Latham and his sisters and brother. J. O. Latham is the man over there—Oliver Latham. I think Oliver wrote me about the matter, and I told him Mr. Jordan had told me something to that effect. My recollection about the matter now is about what it was in 1923, I suppose. My recollection is that Oliver wrote me something about it, and I believe I wrote him a letter back. I am not sure about that."

Appellant J. O. Latham testified to the trust and offered in evidence the letter which he pleaded in his supplemental petition. But in our judgment the issue of forgery was not only raised against this letter, but was clearly established. Appellee offered the following circumstances against the trust:

(a) The suit was not filed until four years after the death of G. W. Jordan.

(b) In 1903 there were only two banks in Huntsville, the town where John Jordan, the grandfather, lived, and an examination of the books of these two banks failed to disclose any such transaction. John Jordan had no account with one of the banks, but had an account with the other, which was offered in evidence, from October, 1901, to April, 1905.

(c) While it was possible for him to have had $12,000 the first of the year 1903, it was not probable, and for him to have given $12,000 to G. W. Jordan to be held in trust for his daughter Ida and her children, such a gift would have been out of all proportion to her interest as an heir in his estate.

(d) John Jordan's attorney, who was intimate with him for many years prior to 1903 and up until his death, and who wrote his will, had never heard of the trust. None of John Jordan's other intimate friends had heard of the trust. His surviving wife had never heard of the trust. She testified:

That she married John Jordan in 1882, and lived with him until his death in 1906; that she was familiar with her husband's business. "John Jordan never discussed with me this trust fund, and never mentioned it to me, if it ever existed. I would have known of such trust fund, if it had been created by him, in the year 1902 or 1903. I never heard this trust fund discussed or mentioned by John Jordan, G. W. Jordan, Sam Latham, or Ida Latham, or any other member of the family of John Jordan."

(e) G. W. Jordan's books, from 1905 on for several years, were offered in evidence, and they failed to reveal any such sum as $12,000. In 1905 the books show an estate of only about $5,000. His books for the years previous to 1905 had been destroyed by fire.

On the issue of forgery, two or three witnesses testified that they thought the letter was in the handwriting of G. W. Jordan. An equal number testified that it was not in his handwriting. Appellees introduced as their witness Mr. Jay Fordyce Wood of Chicago, who was shown to be an expert of outstanding ability. His analysis of the letter, as he discussed the different characteristics of forgery, was absolutely convincing that the letter of July 24, 1918, was not in the handwriting of G. W. Jordan.

On the facts summarized, the verdict of the jury must be sustained.

[2] While Judge Cobb was testifying for appellants, they sought to impeach him by having him identify, and then offering in evidence, the following letter, being the letter referred to by him in his testimony, as quoted above:

"December 15, 1923.

"Mr. J. O. Latham, 206 Linz Building, Dallas, Texas—Dear Oliver: Replying to your recent favor relative to a conversation we had some years ago, will state that I do remember that Mr. G. W. Jordan, a number of years ago, after a trip to Alabama, told me that he had some money that he held in trust for the Latham heirs, his nephews and nieces back in Alabama, and that he was either going to loan the same out or invest the same in good securities, such as government bonds. I cannot state the amount, and, if he ever told me the amount of it, it has escaped my memory. That is all that I know about it.

"Yours very truly,
"JMC/V        [Signed]    Jno. M. Cobb."

There was no error in excluding this letter. The bill of exception fails to show surprise at the testimony of Judge Cobb. For this letter to be admissible to impeach Judge Cobb,

the bill of exception should have shown affirmatively that appellants were surprised at his testimony. We do not agree with appellee that Judge Cobb's testimony has the same legal effect as that of Judge Meek. As we construe Judge Meek's testimony, it was directly in point on the issue of the trust, while Judge Cobb's testimony was directly against the trust; but, having offered him as a witness, appellants should have shown by their bill that they expected him to testify to the facts reflected by his letter. Not having done so, they could not get the letter before the jury by way of impeachment.

[3] Appellants offered in evidence the depositions of W. E. Wightsel, who testified that he was 39 years of age; that he resided in the city of Wichita Falls, Wichita county, Tex.; that he knew J. O. Latham; that he served in the United States army with J. O. Latham at Eagle Pass, Tex, and assisted him in writing his will during the time they were in the army together; that this was about July or August, 1918. The court excluded the answer of the witness that the beneficiary was an uncle of James O. Latham, in which answer the witness said that he had no independent recollection of the name of the beneficiary in the will, but remembers "that said Latham informed him at the time that the beneficiary was his uncle, was in the ranching business, and was rather wealthy." The answer to the ninth interrogatory, which was as follows:

"That said James O. Latham informed him, some time after the will was written, that he had heard from his uncle and that the uncle appreciated the fact that Latham had kept him in mind in making his will. The recollection of the witness is that the said Latham showed the witness the letter from his uncle, in which the uncle said that the will was quite plain,"

—was also excluded. The answer to the third interrogatory was as follows:

"That the direct interrogatories to which he has given answers without qualification are quite well remembered, but. the details of the transaction in some respects are vague and uncertain in the mind of the witness. The witness says that he is certain about the will having been written in longhand, and Latham informing him that he intended typewriting it, and that Latham thereafter informed the witness that his uncle thought the will was quite plain and clear, and that the uncle appreciated being remembered by Latham. The witness is uncertain about having seen the letter, but the best of his recollection is that he saw it. The witness remembers either having seen or discussed the letter with Latham."

This testimony, offered by appellants, was excluded on the ground that it was "immaterial and irrelevant to any issue in the case, and hearsay." There was no error in this ruling. The bill of exception does not show when the witness saw the letter, nor when J. O. Latham talked with him about the letter.

From all that appears on the face of the bill, the facts of this excluded testimony could have come to the knowledge of the witness long after the 24th day of July, 1918, and even after the death of G. W. Jordan in 1920. The testimony offered could only have been received on the theory of res gestæ, and no facts were shown bringing it within that rule. On the face of the bill, it was subject to the objection urged.

[4, 5] Appellants complain of the introduction of the account books and bank books of G. W. Jordan; also of certain receipts and letters from J. O. Latham to G. W. Jordan. There was no error in the reception of this evidence, but the same was material on the issue as to whether G. W. Jordan had received $12,000 from his father's estate. The letters were also probative evidence against the theory of trust. These letters were of a confidential nature from J. O. Latham to his uncle, asking for the loan of money, telling him of his business situation, etc., and none of them suggested that his uncle was holding money in trust for him.

[6] The suit was by plaintiffs against Cora Jordan, individually and as executrix of the will of G. W. Jordan, deceased. By her original answer Cora Jordan answered: "Now comes Cora Jordan, defendant in the above numbered and entitled cause," etc. The prayer was: "Wherefore this defendant prays that she go hence discharged with her costs," etc., signed, "W. P. Hamblen, Attorney for Defendant." A supplemental petition was filed reciting: "Now comes the defendant in the above entitled and numbered cause and files this her first supplemental answer herein," etc., with this prayer: "Wherefore this defendant prays as in her first original answer," signed "George D. Sears, W. P. Hamblen, Attorney for Defendant."

The case went to trial on the pleadings of the plaintiffs and the two answers of the defendant. At the conclusion of the evidence the plaintiffs asked the court to instruct a verdict for them against Cora Jordan, as independent executrix of the last will of G. W. Jordan, for the relief prayed for, on the theory that the answer filed was for her individually, and not in her behalf as executrix. This requested charge was refused, and Cora Jordan individually and as independent executrix was given permission to file a trial amendment, which was immediately filed, and by which she answered in both capacities, pleading in detail and by reference all the facts pleaded in the original and supplemental answers above referred to.

The court did not err in refusing to enter judgment in appellants' favor against Cora Jordan in her capacity as executrix of the last will of G. W. Jordan, deceased. It is clear on the face of the record that, until the conclusion of the evidence, the court and all the parties treated the answer filed by Cora

Jordan as being, not only for her individually, but also in her representative capacity. It was within the discretion of the court to permit an amendment relieving the pleadings of the ambiguity now urged by appellants.

There being no error, the judgment of the trial court is in all things affirmed.