**Robert L. LAIL, Appellant,**

v.

**Mrs. Jessie HANKLA et al., Appellees.**

No. 3147.

Court of Civil Appeals of Texas.

Eastland.

Feb. 25, 1955.

Rehearing Denied March 18, 1955.

· Wagstaff, Harwell, Alvis & Pope, Abilene, for appellant.

Scarborough, Yates, Scarborough & Black, Abilene, for appellees.

GRISSOM, Chief Justice.

Robert L. Lail sued his brothers and sister and the executor of his father's estate for the title and possession of the north half of Section 151, Block 64, H. & T. C. Ry. Co. land in Taylor County. The title to said land had been in the name of J. E. Lail, Sr., since 1909. Robert L. Lail alleged that he was the owner of said land but was dispossessed by defendants; that on September 2, 1909, he and his father, J. E. Lail, Sr., purchased Section 151; that he "furnished" half the consideration and "furnished one half of all the money paid for the deferred payments"; that said land was purchased with the intention that he should own one-half; that, although he paid half the purchase price, the title was taken in the name of J. E. Lail "and an undivided one-half interest was held by the said J. E

Lail, in trust", for him and that thereafter the land was verbally partitioned, the north half being awarded to plaintiff. He alleged the father used and occupied said land but accounted to him for the rents and revenues to June 1, 1950.

Defendants answered, among other things, that if a trust ever existed it was extinguished before the death of the father by payment to Robert L. Lail of all sums claimed by him, which plaintiff accepted in full satisfaction and extinguishment of all claims against said property.

At the close of the testimony, plaintiff filed a motion for an instructed verdict on the grounds that (1) the undisputed evidence showed his parents admitted his ownership in their 1936 wills; (2) because it was undisputed that he owned the property in 1936 and there was no evidence of a transfer of title out of him and (3) because the undisputed evidence showed that J. E. Lail, Sr., was holding the land in trust for him under an "expressed trust and resulting trust" and there was no evidence of a transfer of his title after the trust was established. Said motion was overruled and the court submitted one issue to the jury. The jury found that when J. E. Lail, Sr. died he was not holding the north half of Section 151 in trust for Robert L. Lail. Judgment was entered on the verdict denying plaintiff any interest in said land, except as a devisee in his mother's and father's 1950 wills. Robert L. Lail has appealed.

Appellant's points are to the effect that the evidence showed conclusively, that is, as a matter of law, that the land was held in trust by the father when he died in 1950, or, in the alternative, that the finding to the contrary was against the preponderance of the evidence. The gist of appellant's main contention is that the 1936 wills of the parents showed conclusively that J. E. Lail, Sr. then held said land in trust for him and, since there was no evidence of a transfer of title out of appellant, as a matter of law, he was entitled to a judgment for title and possession.

It was agreed that Section 151 was sold on December 2, 1909 and a deed executed to J. E. Lail, Sr. The evidence shows that the cash payment was $416 and that four notes for $416 each and a deed of trust were executed by J. E. Lail, Sr. and that in December, 1913, a release of said deed of trust lien, reciting payment of said notes, was executed by the seller to J. E. Lail.

On June 6, 1936, J. E. Lail and wife executed separate wills. The second paragraphs thereof provided as follows:

"To my oldest son, R. L. Lail, I give, devise, and bequeath the North One-Half of Section No. 151, Block No. 64, of the H & T C Ry. Co. surveys in Taylor County, Texas, in fee simple, because in reality he owns the property and the title of same merely in my name in trust for my use during my life."

Each testator then devised and bequeathed to the other all the remainder of his property, with a provision that the estate left at the death of the survivor should go to their five children in equal portions. These wills were not written by a lawyer.

J. E. Lail, Sr. executed an oil and gas lease on 1600 acres of land, including that in controversy, and, on December 17, 1949, he was paid therefor $10,500. On the next day, December 18, 1949, there was a meeting of all the children and the parents in the latter's home and there was presented to and read by all the children an agreement. Defendant's witnesses identified the following as the agreement then presented:

"This agreement, entered into this 18th day of December, 1949, by and between J. E. Lail and Sara Frances Lail, his wife, party of the first part, and their children, named as following: R. L. Lail, Jessie S. Hankla, P. F. Lail, Ernest Lail, John O. Lail, known hereafter in this agreement, as parties of the second part
Witnesseth: That whereas under this agreement J. E. Lail and Sara Frances Lail, his wife, as first parties, do not

owe any debts or obligations, in any way, shape, form or fashion to the said R. L. Lail, Jessie S. Hankla, P. F. Lail, Ernest Lail and John O. Lail, second parties, hereto as second party. The first parties are free from all obligations, to the parties of the second part, Any and all expenditures, by either member of the second party, have been reimbursed, in cash, or by check, by J. E. Lail and Sara Frances Lail, his wife, party of the first part. In witness whereof the parties have executed this indenture the day and year hereinafter mentioned.

J. E. Lail  Sara F. Lail
Parties of the first part.

Jessie L. Sandefur Hankla
P. F. Lail
Ernest Lail
John O. Lail
Parties of the second part."

Most of appellees' witnesses testified, in effect, that when this agreement was presented to Robert L. Lail he said it was a good idea and that they all should sign it. One of appellees' witnesses testified that Robert L. Lail said he could not sign it at that time. Robert L. Lail testified: "I have never seen this piece of paper before." He denied that he saw said agreement on the former trial, when it was offered in evidence but not admitted. Robert L. Lail testified that the instrument introduced was not the one presented to him. He said the agreement presented to him contained just a few lines for the children to sign and P. F. and John O. Lail were the only ones who had then signed it; that his sister and sister-in-law showed him the "letter" and asked him to read it, that he glanced over it, saw what it was and said "It would be a very good idea if they could get me to sign it but I can't sign it *because they do owe me money.*" (Emphasis ours).

Appellant introduced two checks signed by J. E. Lail, Sr., dated January 6, 1950 and payable to Robert L. Lail. One was for $3,380 and the other for $2,880. On the back of one check was written:

"Grazing lease on 320 acres of
section 151 Taylor Co., Tex-
as 20 yrs (a) 65¢ per acre          $4160.00
Dec. 1 1949 to June 1 1950. (a)
75¢ per acre                             120.00
                                        ─────────
                                        $4280.00
Less Taxes (20 yrs)                      400.00
" 1 mile fence                          500.00
                                        ─────────
Balance                                 $3380.00"

Across the back of the other was written:

"Oil bonus on 320 acres of sec-
tion 151 Taylor Co., Texas
320 acres (a) $9.00 per acre $2880.00."

Said checks were endorsed by appellant and paid. All of the writing on the checks, except the signature of J. E. Lail on the face of the checks, was in the handwriting of appellant.

On January 23, 1950, J. E. Lail, Sr. and wife each executed a will in which each gave to the other all the property owned by them at their death and provided that if the other should predecease the testator, or not survive disposition of his estate, his property should go to their five children in equal shares. The fourth paragraph of each of said wills is as follows:

"If any devisee, legatee, or beneficiary under this will or any legal heir of mine, or person claiming under any of them, shall either directly or indirectly, singly or in conjunction with other persons, seek to establish or assert any claims to my estate or any part thereof, excepting under this will, or to impair, invalidate or set aside its provisions, or to have the same or any part thereof, or any devise or devisee herein, limited, declared void or diminished, or to have the same not fully carried out in accordance with the provisions hereof, or shall endeavor in any manner whatsoever to secure or take any part of my

estate other than through or under this will, then, in that or any or all of the above-mentioned cases or events, I hereby give, devise and bequeath to such person the sum of One Dollar ($1.00) and no more, in lieu of any other share or interest in my estate; and all the rest of the interest or share which would otherwise have gone to such person or persons, by devise or inheritance, or which they may be entitled to take under any provision of law, shall go, in fee simple, equally, share and share alike, to such, each and all of my devisees and legatees mentioned in this will, as shall not have made, joined or assisted in such proceedings; and if all of said devisees and legatees shall join, assist, consent, or acquiesce in such proceedings, I hereby give, devise and bequeath, in fee, the whole of my estate to my next heirs at law, excluding said devisees and legatees, according to the laws of succession then in force in the State of California, anything to the contrary in this Will notwithstanding."

With reference to the quoted agreement of December 18, 1949, which was signed by the father and mother and all the children except appellant, the wife of P. F. Lail testified that she wrote said agreement at the request of Mr. and Mrs. J. E. Lail, Sr.; that she wrote what they told her to write and they read, approved and signed the agreement introduced. She testified that all of the children came to the home of the parents that day and Mrs. J. E. Lail, Sr. left the instrument on a table and told the "boys" when they came in that she would like for them to "look over and read and sign" it; that all of them read it and all signed it except Robert L. Lail. She testified that on December 17, 1949, J. E. Lail, Sr. received $10,560 for an oil lease on 1600 acres, including the land in controversy.

This is the second appeal in this case. See Beverly Hills Nat. Bank & Trust Co. v. Lail, Tex.Civ.App., 250 S.W.2d 305. The former judgment was reversed because of the failure to admit the proposed agreement

heretofore quoted and testimony as to what Robert L. Lail said when he was shown a written instrument at the family gathering on December 18, 1949. On the first trial appellant contended there was a resulting trust in his favor. Appellant says that after the first trial he learned the 1936 will of his mother was in the possession of defendants and contained the same recital as his father's will relative to holding the north half of Section 151 in trust for appellant. Appellant now contends said recitals in the 1936 wills conclusively show that a trust existed when his father died.

■ The verdict being for defendants we must consider the evidence in the light most favorable to the finding that the father, at his death, did not hold the land in trust. Solether v. Trinity Fire Ins. Co., 124 Tex. 363, 78 S.W.2d 180, 182. This finding could mean there never was a trust or that it had terminated before the father's death. The statement in Mrs. Lail's 1936 will that the title to said land was in her name is obviously incorrect. The statement by each parent in the 1936 wills that the land was for "my" use during "my" lifetime could not be exactly accurate. The legal title stood in the name of J. E. Lail, Sr. From the entire record it could reasonably be concluded that when said statements were made in the 1936 wills the parents intended thereby to inform the other children why they were devising Robert L. Lail a half section of land and permitting him also to share equally with them in the remainder of their estates. If, as Robert L. Lail alleged, he "furnished" half the money paid for said section, and if he was to get half the land unless repaid before his father's death, and he had not been repaid in 1936 said provision was reasonable and could readily be understood. If Robert L. Lail furnished half the purchase price, he furnished $1,040, plus interest. If the statements in the 1936 wills that the parents were to have the use of said land during their lifetime are true, they did not owe appellant $4,280, or any other amount, for a grazing lease on the 320 acres and appellant's statement on the back of a check to that effect is incorrect. If J. E. Lail, Sr.

received $10,500 for a lease on 1,600 acres, including the 320 acres in controversy, and if appellant was entitled to his proportionate share because of his ownership of said 320 acres, he was not entitled to $9 per acre, but approximately $6.56 per acre, or $2,000, instead of $2,880 that appellant in a statement on the back of one of the checks said he was paid as his part of the lease money. In other words, the jury was not compelled to believe appellant's statements on the backs of said checks of the consideration or reason for the payment to appellant of $6,260 on January 6, 1950.

If appellant's parents owed him "money" on December 18, 1949, as he says he said they did when he was asked to sign an agreement that the parents were not obligated to any of the children in any way, and appellant, on January 6, 1950, was paid $6,260 by his father, the jury may reasonably have concluded that there was a settlement with appellant for the money "furnished" by him to pay for Section 151 and a termination of any "trust" relation, regardless of whether or not a trust relation legally existed. The parents' wills executed soon thereafter, on January 23, 1950, are evidence that they did not then owe appellant anything and did not hold the land in trust for him. The 1950 wills were materially different from the 1936 wills only in that they did not devise to appellant the 320 acres, nor state that a trust relation existed, but, on the contrary, definitely provided that if any child claimed any part of the parents' estates otherwise than through the 1950 wills he should get $1 "and no more."

"* * * a trust is terminated by the entire fulfilment of its object * * *." 26 R.C.L. 1210, Sec. 52.

"Where all the parties to a trust are of full age and it was created by an arrangement to which the trustee and the cestuis que trust were the only parties, he and they may terminate it at any time." 26 R.C.L. 1211, Sec. 53.

The jury might have believed that the son "furnished" half the purchase price of the section with the understanding that if the son was not repaid half the land should be his at his father's death; that the son had not been repaid in 1936 and the parents had that in mind when they executed the 1936 wills; that on December 18, 1949, the parents did owe Robert some "money", as he claimed, and that the money furnished by Robert was repaid with interest on January 6, 1950, when his father paid him $6,260. The jury could have considered that it was significant that appellant said his parents owed him "money" instead of saying they held the land in trust for him. It is undisputed that Robert was then paid $6,260. It is not conclusively established what he was paid for. Robert's statements on the backs of the checks, the proposed agreement of December, 1949, the payment of $6,260, the two sets of wills and all the facts and circumstances in this record permit different inferences. Reasonable minds could reach different conclusions. As heretofore shown, the jury could have disbelieved appellant's statement that the $2,880 check was for the lease money received by the father on the 320 acres. There is evidence that the father received only $2,000 for a lease on the 320 acres. The jury could have believed from statements in the 1936 wills that the parents were to have the free use of the 320 acres while they lived and that they did not owe appellant $4,280, $3,380, nor any amount, for a grazing lease on the 320 acres. Appellant's statement on the back of the $3,380 check indicates the father had paid the taxes on the 320 acres for the last 20 years and had spent $500 building a fence on it. On December 18, 1949, before the payment to appellant of $6,260 on January 6, 1950, appellant said his parents owed him some "money". The jury could have believed the parents then owed him money for that "furnished" to pay for Section 151 and that the parents repaid him with interest on January 6, 1950. The jury could have believed that the difference between the 1936 and 1950 wills was caused by such payment. The jury could have thus believed and could have concluded that the parents had this in mind when they provided in their 1950 wills that if any child claimed any of their estates, otherwise than through the 1950 wills, he should get

$1 "and no more." Because a banker writing a ranchman's will used the word "trust" in the 1936 wills it does not follow as a matter of law that such a relationship legally existed. The statements in the 1936 wills were statements against interest and admissible as evidence of the existence then of a trust relationship but were not conclusive thereof. If appellant was to get half the land only in the event the father died without repaying him, many of appellant's actions were consistent. But, if he has been the true owner since 1909 appellant's delay until after the parents' death to assert his ownership would naturally raise doubts as to his claim. Johnson v. Deloney, 35 Tex. 42, 47. See also Wright v. Wright, 134 Tex. 82, 132 S.W.2d 847, 849; Latham v. Jordan, Tex.Civ.App., 3 S.W.2d 555; Id., Tex.Com.App., 17 S.W.2d 805; 65 C.J.S., Negligence, § 1, pp. 307, 321; In re Richardson's Estate (In re Petersen), 134 Misc. 174, 235 N.Y.S. 747; Quattlebaum v. Hendrick, 179 Ark. 494, 16 S.W.2d 591; 65 C.J. 264; Mellette v. Hudstan Oil Corp., Tex. Civ.App., 243 S.W.2d 438, 444 (RNRE). There is a presumption that a deed conveys the property described to the grantee named in a deed and that he is the owner thereof. Clayton v. Ancell, 140 Tex. 441, 168 S.W.2d 230; 42 Tex.Jur. 687, 688. The statements in the 1936 wills did not indicate an intention to then create a trust. If a trust then existed it was created in 1909 when the deed was executed to the father. Hambleton v. Southwest Texas Baptist Hospital, Tex. Civ.App., 172 S.W. 574, 579; 65 C.J. 348. But, even if a trust were created in 1909 and it still existed in 1936, we think the evidence authorized a finding that it had been extinguished.

■ Appellant alleged he furnished half the consideration and "furnished one-half of all of the money which was paid for the deferred payments." A resulting trust in land must arise, if at all, at the instant legal title vests in the trustee. No previous or subsequent oral agreement, nor payments made after title vests, will create a resulting trust, unless payments are made pursuant to an enforceable agreement that existed when the deed was executed. Wright v. Wright, 134 Tex. 82, 132 S.W.2d 847, 849; Dickens v. Dickens, Tex.Civ.App., 241 S.W. 2d 658, 663 (RNRE); McAlister v. Eclipse Oil Co., 128 Tex. 449, 98 S.W.2d 171, 175. The mere furnishing of half the money by appellant to pay the notes as they came due did not necessarily create a resulting trust. Baughman v. Baughman, 283 Ill. 55, 119 N.E. 49, Ann.Cas. 1918E, 895. There is no allegation of the existence at the time the deed was executed of an agreement whereby appellant was bound to pay half the notes as they came due, unless it can be inferred from the allegation of intention. Except for the $208 cash payment, alleged to have been made by appellant, no greater resulting trust could arise unless payment of half the amount of the notes as they came due was made by appellant pursuant to an enforceable agreement made when the deed was executed. As to this matter the evidence is certainly not conclusively in favor of appellant and the declarations in the 1936 wills did not make it so. 42 Tex.Jur. 642, 643. If the jury believed the situation suggested existed, as they could have, they had a right to find, as they did, that when the father died he was not holding the land in trust for appellant. Under such a situation, the son had no title and was not intended to have unless and until the father died without repaying the money furnished by the son. Morrison v. Farmer, 147 Tex. 122, 213 S.W.2d 813, 815; Wheeler v. Haralson, 128 Tex. 429, 99 S.W.2d 885, 886; Garcia v. Garcia De Ortiz, Tex.Civ.App., 257 S.W.2d 804, 809; Rebold Lumber Co. v. Scripture, Tex.Civ.App., 279 S.W. 586 (WR); Mellette v. Hudstan Oil Corp., Tex.Civ.App., 243 S.W.2d 438, 450 (RNRE); Sorrells v. Coffield, 144 Tex. 31, 187 S.W.2d 980, 982; Barber v. Coleman, Tex.Civ.App., 173 S.W. 2d 660, 664; Knight v. Tannehill Bros., Tex.Civ.App., 140 S.W.2d 552, 561.

■ We conclude that there was a question of fact as to whether there ever was a trust and, if so, whether it still existed at the death of the father. Ditto v. Piper, Tex.Civ.App., 244 S.W.2d 547, 549 (RNRE); Archenhold v. B. C. Evans Co., 11 Tex.Civ.App. 138, 32 S.W. 795; Wright v. Wright, 134 Tex. 82, 132 S.W.2d 847, 849;

Trinity Fire Ins. Co. v. Solether, Tex.Civ. App., 49 S.W.2d 940, 942; Solether v. Trinity Fire Ins. Co., 124 Tex. 363, 78 S.W.2d 180, 182; Landon v. Brown, Tex.Civ.App., 266 S.W.2d 404 (RNRE); Amerada Petroleum Corp. v. Massad, Tex.Civ.App., 239 S.W.2d 730, 733 (RNRE); Bunnell v. Bunnell, Tex.Civ.App., 217 S.W.2d 78, 82; Smalley v. Paine, 62 Tex.Civ.App. 52, 130 S.W. 739, 748 (W.R.)

The judgment is affirmed.