W. E. GLENN, Guardian, Appellant,

v.

Agness DANIEL et al., Appellees.

No. 3525.

Court of Civil Appeals of Texas.

Eastland.

April 29, 1960.

On Rehearing June 17, 1960.

Rehearing Denied July 15, 1960.

**320**

Sam Cleveland, Stephenville, for appellant.

C. O. McMillan, Stephenville, for appellee.

GRISSOM, Chief Justice.

W. E. Glenn, as guardian of the estate of Grover C. Glenn, a person of unsound mind, sued Agness Daniel, widow of Joe H. Daniel, and Miller Daniel for title and possession of a tract of land. Defendants answered that the 609 acres in controversy were purchased by Grover C. Glenn and Joe H. Daniel on November 10, 1942; that Glenn and Daniel were then joint owners and operators of several businesses and were brothers-in-law and that a close family, business and fiduciary relationship existed between them; that Daniel entered into a written contract to purchase said land for $12,794.25, by payment of $200 upon execution of said contract and $8,436.24 upon approval of title and by assumption of a debt of $4,158.01 to the Federal Land Bank; that, in November, before Daniel's purchase was consummated, Glenn suggested that Daniel defer withdrawing his money from Glenn Furniture Company, in which they were both interested, until December, 1942, and that Glenn would advance the "balance" of the cash payment until December and have the deed made to himself and hold title for both; that Daniel had confidence in Glenn and agreed thereto; that Daniel paid $200 of the purchase price when he executed his contract to buy the land and Glenn paid the balance of the cash payment and took the deed in his name for their benefit; that the land was called the "Joe D." ranch and was operated by Daniel and Glenn as a joint enterprise; that on December 19, 1942, Daniel paid Glenn $4,000, which, together with the $200 cash paid by Daniel when he signed his purchase contract and incidental expenses paid by Daniel, constituted one-half of the cash payment; that Glenn was adjudged insane and Daniel was appointed guardian of his estate and filed an inventory showing each owned one-half of said land. Defendants alleged that Joe H. Daniel, deceased, had devised to them his interest in the land. Wherefore, defendants' sought judgment establishing their ownership of a one-half interest in the land.

In a trial to the court, judgment was rendered to the effect that Joe H. Daniel in his lifetime had equitable title to a one-half interest in the land, which is now owned by Agness and Miller Daniel. Plaintiff has appealed. They contend, in substance, that the court erred in holding that Glenn held the title to a one-half interest in trust for Joe H. Daniel; that the evidence was insufficient to sustain such finding and that the court erred in admitting certain evidence.

██ There are no findings of fact or conclusions of law. Therefore, we must presume the court found every fact required to support the judgment, provided it has support in the evidence. Glenn being insane and Daniel dead, the defendants necessarily depended largely on circumstantial evidence. Since the court found for the defendants, we must view the evidence in the light most favorable to them.

██ There was evidence introduced from which it may have reasonably been concluded that at the time the deed was executed Grover Glenn and Joe Daniel were brothers-in-law and jointly owned and operated other businesses and that a situation of trust and confidence existed between them; Grover Glenn executed a will in which Joe H. Daniel was named a residuary devisee; Glenn's wife executed a will in 1945 in which she bequeathed $10,000 to Joe H. Daniel; Daniel moved on the ranch soon after it was purchased and occupied it as his home until he died and his widow still resides there; it was called the "Joe D." ranch and that Daniel instigated the trade and signed a written contract to purchase

the land at the price and on the terms it was purchased the next month in the name of Glenn, and Daniel deposited $200 when he signed his contract to buy the land.

The Daniels' allegations that before delivery of the deed to Glenn it was agreed that Daniel would not withdraw his money from their company until December, and Glenn would pay the "balance" of the cash consideration and take the deed in his name for the benefit of both and that in December, 1942, when it was contemplated Daniel's money could be more suitably withdrawn from their furniture business, it would be withdrawn and one-half of the balance of the cash payment would then be paid by Daniel to Glenn and that thereafter they would jointly discharge the debt due the land bank, is not supported by any direct admissible evidence. A finding that such allegations are true must be based upon the circumstances hereafter mentioned.

There is evidence that Joe H. Daniel paid $200 to the seller when he signed his contract to buy the land. There is no proof that this was a part of the cash consideration paid when Glenn received a deed to the same land, unless it may be inferred from the circumstances shown. Daniel's contract provided that if he should wrongfully fail to consummate his contract, said $200 might be retained by the seller as liquidated damages and paid to the land agent. It is undisputed that Daniel paid Grover Glenn $4,000 in December, 1942; that he paid $500 on the debt to the land bank in May, 1944, and that he and his widow have paid the taxes and the premiums for fire insurance on the improvements thereon since soon after it was purchased.

Hon. Ira Butler, who had known Glenn and Daniel since 1933, and had been an attorney for Glenn Brothers Furniture Company and had represented Daniel as guardian of the estate of Glenn and as administrator of the estate of Glenn's deceased wife, testified that he had in his possession Daniel's contract to buy the land, which stated the same terms as that on which it was purchased in the name of Glenn, and a cancelled check for $4,000, dated December 19, 1942, signed by Daniel and payable to and endorsed by Glenn. Mr. Butler indentified a written statement made to him by Joe Daniel which stated that after Daniel executed a contract to buy the land and deposited $200, he and Glenn agreed to buy the land and it was agreed that Glenn should pay the balance of the cash consideration and Daniel would wait about a month before withdrawing his money from Glenn Furniture Company and Daniel would then pay Glenn half of the balance of the cash payment and that Glenn would take title in his name for their joint benefit; that during the next month he paid Glenn $4,000, which with some incidental expenses paid by him constituted his half; that thereafter he made some payments to the Federal Land Bank and some payments were made from their joint funds. Said instruments were admitted in evidence. Butler testified that the contract for the purchase of the land signed by Daniel and Mrs. Cox, the cancelled check and said statement were acquired by him in connection with his preparation for Daniel of the inventories and appraisements of the estates of Cornelia Glenn, deceased, and Grover Glenn, a person of unsound mind.

Mr. Frith, an accountant of Fort Worth, testified that he had known Grover Glenn since 1917 and Joe H. Daniel since 1922; that he prepared the income tax returns for them and their furniture company for many years prior to 1944, when that business was dissolved; that for many years Daniel managed the store; that Frith always had the "impression", gained from conversations with Glenn and Daniel, that Joe Daniel owned an interest in the land, although he could not recall specifically what was said by them twelve years before.

W. E. Glenn, guardian of Grover Glenn, testified that among the papers coming into his hands as guardian in 1955 he found in the possession of Mr. Butler a lease of the "Joe D." ranch by Glenn to Daniel. Al-

though this testimony was introduced by plaintiff and evidenced a recognition by Daniel that Glenn was the sole owner, nevertheless, when taken in connection with other testimony, it might possibly be considered as tending to show that Daniel owned an interest therein. George Smith testified that he worked on the "Joe D." ranch for four years; that he heard a conversation between Glenn and Daniel concerning said lease; that Glenn told Daniel to have the lease prepared on Glenn's "half interest" in the ranch; that they were then sawing wood with a power saw and Glenn was afraid someone would get hurt and he would be sued for damages. There was an admission that the fair rental value per acre per year was $2.25 to $2.50. The rental stipulated in said lease was $270 per year for the 609 acres, plus taxes and insurance. Defendants conclude with, perhaps, some justification, that, although the instrument purports to lease the whole ranch, the consideration recited for a lease of 609 acres, which was of the rental value stated, indicates that Glenn recognized that Daniel owned an interest in the land.

Agness Daniel, Joe H. Daniel's widow, testified, in effect, that Joe H. Daniel lived on the "Joe D." ranch and was in possession thereof from soon after it was purchased until his death; that he paid the taxes and insurance as long as he lived and that she had paid the taxes and insurance and remained in possession since his death.

If Daniel's statements to Butler were admissible as evidence of Daniel's ownership of a half interest in the land and the truth of the statements relative to a trust, the court correctly found that a trust was established in favor of Daniel and that he was the equitable owner of a half interest in the land, which interest is now owned by defendants. Jackson v. Hernandez, 155 Tex. 249, 285 S.W.2d 184; Wright v. Wright, 134 Tex. 82, 132 S.W.2d 847; Lail v. Hankla, Tex.Civ.App., 276 S.W.2d 340; 42 Tex. Jur. 642, 643; 89 C.J.S. Trusts § 51, p. 805. (The Jackson-Hernandez opinion distin-

guishes some of the cases relied on by the plaintiffs.) But, Daniel's statements were not admissible as evidence of his title or of the truth of the statements relative to a trust. Gilbert v. Odum, 69 Tex. 670, 7 S.W. 510; McCormick & Ray, Texas Law of Evidence, page 447; 17 Tex.Jur. 598; Radford v. Hill, Tex.Civ.App., 185 S.W.2d 129, 131, (Ref.W.M.); Niemann v. Garcia, Tex.Civ.App., 144 S.W.2d 621. Without the benefit of such statements, the evidence was insufficient to sustain the holding that the Daniels owned a half interest in the land. The declaration of Daniel to his counsel, while in possession of the land, was admissible to explain the nature and character of his possession. It was not admissible as proof of his title, or the truth of the claimed parol trust agreement and payment. As proof of his title and as proof of the truth of his claim, it was self-serving. It was hearsay and constituted no evidence of those matters. Henry v. Phillips, 105 Tex. 459, 151 S.W. 533, 537; Radford v. Hill, Tex.Civ.App., 185 S.W.2d 129, 131, (Ref.W.M.); Niemann v. Garcia, Tex.Civ. App., 144 S.W.2d 621; Gilbert v. Odum, 69 Tex. 670, 7 S.W. 510; McCormick & Ray, Texas Law of Evidence, page 447. When Daniel's written declaration of his agreement with Glenn to jointly purchase the land, taking the deed in Glenn's name for their mutual benefit, is subtracted from the evidence on which the Daniels must rely to sustain their judgment for one-half of the land, based on a parol trust, scant evidence thereof remains. Joe Daniel executed a written contract to purchase the land which recited that he had made a cash deposit of $200. The deed to Glenn recites that Glenn paid the entire cash consideration. Daniel's contract provided that if he should wrongfully fail to consummate it, his $200 deposit might be retained by the seller and paid to the real estate agent. What happened to the $200 is not shown. To conclude from all the circumstances that Daniel's $200 deposit was a part of the cash payment made for the land requires an elastic imagination. The Daniels have a judgment for half of

the land, presumably based upon the assumption that a trust was agreed upon and Joe Daniel agreed to pay, and did pay, half of the consideration. Even if said $200 is considered as being paid by Daniel as part of the cash consideration for the deed to Glenn, said amount, plus the $4,000 paid by Daniel to Glenn in December, 1942, plus the $500 paid by Daniel to the Federal Land Bank in May, 1944, does not constitute one-half of the $12,794.25 total consideration, nor do the $200 and $4,000 cash payments equal half of the recited cash consideration paid by Glenn. The year Daniel moved on the land is not shown. Glenn was adjudged insane in May, 1946. It is shown that Daniel moved onto the land before Glenn became insane and that he, or his wife, had remained in possession ever since and paid the taxes and the insurance. However, on September 1, 1945, Glenn leased the land to Joe Daniel for ten years. The lease provided that Daniel should pay therefor $270 per year, plus taxes and insurance. In the absence of Daniel's hearsay statement relative to his alleged trust agreement, the evidence is insufficient to authorize a finding of either an agreement creating a parol trust in half the land, or payment of half of the consideration. Therefore, the judgment must be reversed and the cause remanded.

### On Motion for Rehearing

On April 29, 1960, we held that the appellees' evidence was insufficient to sustain a finding of a parol trust in land and reversed the judgment and remanded the cause for a new trial. On May 13, 1960, appellant filed a motion for rehearing, contending that the judgment should have been rendered for appellant and pointed out that the record shows that the trial began on July 28, 1959, and that during the trial it was suspended so that appellees might procure additional evidence and that thereafter the trial was resumed and completed on the 14th day of October, 1959. Although said motion has been filed more than 30 days and appellees have notice thereof, they have filed no reply. It now appearing that the case has been fully developed and apparent that appellees have no material additional evidence to present upon another trial, said motion is granted. Our former judgment is set aside and the judgment is reversed and judgment is rendered for appellant.